**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL WALKER, individually and on behalf of all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> FRED MEYER, INC., a Delaware corporation, *Defendant-Appellee.* | No. 18-35592 <br><br> D.C. No. CV 17-1791 YY <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted June 11, 2019
Anchorage, Alaska

Filed March 20, 2020

Before: A. Wallace Tashima, William A. Fletcher,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Fair Credit Reporting Act

The panel affirmed in part and reversed in part the district court's dismissal of an action under the Fair Credit Reporting Act, which requires employers who obtain a consumer report on a job applicant to first provide the applicant with a "clear and conspicuous disclosure" that the employer may obtain such a report, and to provide this disclosure "in a document that consists solely of the disclosure."

Reversing the dismissal, for failure to state a claim, of plaintiff's claim under 15 U.S.C. § 1681b(b)(2)(A), the panel held that the disclosure provided by defendant violated the FCRA's standalone disclosure requirement, which does not allow for the inclusion of any extraneous information in the consumer report disclosure. Addressing what qualifies as part of the disclosure, the panel held that, beyond a plain statement disclosing "that a consumer report may be obtained for employment purposes," some concise explanation of what the phrase means may be included. The panel remanded, leaving it for the district court to decide in the first instance whether the remaining language in defendant's disclosure satisfied the "clear and conspicuous" requirement.

Affirming the dismissal of plaintiff's claim under § 1681b(b)(3)(A), the FCRA's pre-adverse action notice requirement, the panel held that the right provided by the FCRA to dispute inaccurate information in a consumer report

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

does not require employers to provide job applicants or employees with an opportunity to discuss their consumer reports directly with the employer. Instead, the FCRA requires that an employer provide, in a pre-adverse action notice to the consumer, a description of the consumer's right to dispute with a consumer reporting agency the completeness or accuracy of any item of information contained in the consumer's file at the consumer reporting agency.

## COUNSEL

Steven L. Woodrow (argued) and Patrick H. Peluso, Woodrow & Peluso LLC, Denver, Colorado; Neal Weingart, Jones & Swartz PLLC, Portland, Oregon; for Plaintiff-Appellant.

Faith C. Whittaker (argued) and Michael B. Mattingly, Dinsmore & Shohl LLP, Cincinnati, Ohio; Michael Porter and Taylor D. Richman, Miller Nash Graham & Dunn LLP, Portland, Oregon; for Defendant-Appellee.

## OPINION

TASHIMA, Circuit Judge:

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), protects consumers' privacy rights by requiring employers who obtain a consumer report on a job applicant to first provide the applicant with a "clear and conspicuous disclosure" that the employer may obtain such a report. 15 U.S.C. § 1681b(b)(2)(A)(i). That disclosure must be provided "in a document that consists solely of the

disclosure." *Id.* We recently held that because of this "clear statutory language that the disclosure document must consist 'solely' of the disclosure," *Syed v. M-I, LLC*, 853 F.3d 492, 496 (9th Cir. 2017), the FCRA's disclosure requirements do not allow for the inclusion of any extraneous information in the consumer report disclosure, even if such information is related to the disclosure. *See Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1175–76 (9th Cir. 2019). Given that the disclosure document may contain only the § 1681b(b)(2)(A)(i) disclosure, we now address as a matter of first impression what qualifies as part of that "disclosure . . . that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).

We hold that beyond a plain statement disclosing "that a consumer report may be obtained for employment purposes," some concise explanation of what that phrase means may be included as part of the "disclosure" required by § 1681b(b)(2)(A)(i). For example, a company could briefly describe what a "consumer report" entails, how it will be "obtained," and for which type of "employment purposes" it may be used. *See id.*

We also hold that the right provided by the FCRA to dispute inaccurate information in a consumer report does not require employers to provide job applicants or employees with an opportunity to discuss their consumer reports directly with the employer. *See id.* § 1681b(b)(3)(A). Instead, the FCRA requires that an employer provide, in a pre-adverse action notice to the consumer, a description of the consumer's right to dispute with a consumer reporting agency the completeness or accuracy of any item of information contained in the consumer's file at the consumer reporting agency. *See id.* §§ 1681g(c)(1)(B)(iii), 1681i.

Accordingly, we affirm in part, reverse in part and remand.

## I.

In March 2017, Plaintiff-Appellant Daniel Walker ("Walker") applied for a job at one of Defendant-Appellee Fred Meyer Inc.'s ("Fred Meyer") supermarkets. Shortly after submitting his application, Walker was hired—contingent upon satisfactory results on a background check—as an associate at a Fred Meyer store in Portland, Oregon.

As part of the hiring process, Walker was presented with several disclosure and acknowledgment forms, including two documents concerning an investigation of his background. One of these documents was a Disclosure Regarding Consumer Reports and Investigative Consumer Reports (the "Disclosure"), which informs new hires that Fred Meyer will investigate their background using an employment background reporting company, General Information Services, Inc. ("GIS"). Specifically, this Disclosure, which is the subject of this litigation, consisted of the following paragraphs, followed by a signature line to acknowledge receipt:

> We ([t]he Kroger family of companies) will obtain one or more consumer reports or investigative consumer reports (or both) about you for employment purposes. These purposes may include hiring, contract, assignment, promotion, reassignment, and termination. The reports will include information about your character, general reputation, personal characteristics, and mode of living.

We will obtain these reports through a consumer reporting agency. The consumer reporting agency is General Information Services, Inc. GIS's address is P.O. Box 353, Chapin, SC 29036. GIS's telephone number is (866) 265-4917. GIS's website is at www.geninfo.com.

To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.

You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.

If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.[1]

---

[1] No party disputes that this is the language of the Disclosure presented to Walker. As the magistrate judge noted, the text of the Disclosure may be considered at the motion-to-dismiss stage under the incorporation-by-reference doctrine, because, although Walker did not

Second, Walker was also presented with an Authorization Regarding Consumer Reports and Investigative Consumer Reports (the "Authorization"), which seeks a new hire's authorization for GIS to conduct such an investigation through a variety of means, including "any public or private information source." Walker signed both these documents in order to proceed with this employment opportunity, but he allegedly found the documents confusing and was therefore unable meaningfully to evaluate and understand the nature of the report that Fred Meyer intended to obtain about him.

Several weeks later, GIS sent Walker a letter (the "pre-adverse action notice"), dated April 3, 2017. The letter provided Walker with a copy of the consumer report that GIS had procured about him, explained that Fred Meyer uses such reports "in evaluating individuals for employment as Fred Meyer team members," and notified Walker that Fred Meyer "has or will be completing their review of your application within the next few days, and may take action based on the enclosed report." The letter then informed Walker that he could dispute the accuracy or completeness of the consumer report with GIS directly by filling out a request form within five business days. However, the letter provided no option for or information about discussing the report with Fred Meyer itself.

---

attach the document to his pleadings, he referenced it throughout his complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." (internal quotation marks omitted)); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that the court may "treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)").

Five business days later, GIS sent Walker a second letter, dated April 10, 2017, informing him that Fred Meyer had decided, based on the consumer report, not to continue his employment. In the letter, GIS stated that it did not make the decision to terminate Walker's employment, and that it was unable to provide him with an explanation of the decision. Looking for answers, Walker contacted his Human Resources Manager at Fred Meyer, who told him that she was neither aware of the consumer report nor of the fact that Walker's employment was being terminated.

On November 8, 2017, Walker filed a putative class action complaint against Fred Meyer, alleging that Fred Meyer had willfully violated the FCRA by: (1) providing an unclear disclosure form encumbered by extraneous information, in violation of 15 U.S.C. § 1681b(b)(2)(A); and (2) failing to notify Walker in the pre-adverse action notice, in violation of 15 U.S.C. § 1681b(b)(3), that he could discuss the consumer report obtained about him directly with Fred Meyer.

On December 28, 2017, Fred Meyer filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Walker had failed to state a claim because the conduct described in the complaint did not violate the FCRA. Specifically, Fred Meyer argued that its disclosure form satisfied the FCRA's consumer report disclosure requirements, and that the FCRA did not require that Walker explicitly be provided with the opportunity to discuss his consumer report with Fred Meyer prior to his termination.[2]

---

[2] Fred Meyer also moved to dismiss Walker's second claim concerning the pre-adverse action notice under Rule 12(b)(1), arguing that Walker lacked Article III standing to bring that claim because he never

Adopting in part a magistrate judge's findings and recommendations regarding Fred Meyer's motion to dismiss, the district court granted the motion and dismissed Walker's complaint with prejudice for failure to state a claim. In particular, the district court ruled that Fred Meyer's Disclosure met the FCRA's disclosure requirements because it was not overshadowed by extraneous information. As to Walker's second claim, the district court concluded that the FCRA does not require that pre-adverse action notices inform an employee how to contact and discuss his consumer report directly with his employer. Walker timely appealed the district court's order of dismissal.

## II.

We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Syed*, 853 F.3d at 499. In so doing, we accept all well-pleaded factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Id.* In determining whether the complaint's allegations state a claim for relief, we review de novo the district court's construction of the FCRA, because the interpretation of a statute is a question of law. *See id.*

## III.

Walker argues that the district court erred by granting Fred Meyer's Rule 12(b)(6) motion to dismiss because,

---

availed himself of the opportunity to dispute the contents of his consumer report. The district court rejected this argument, ruling that Walker had alleged a sufficiently particularized and concrete injury to establish Article III standing.

under the correct interpretation of the FCRA's requirements, both the Disclosure and the pre-adverse action notice violated the FCRA.  We address each of Walker's two claims in turn.

**A.**

To protect consumers' privacy rights, the FCRA requires that an employer who obtains a consumer report about a job applicant first provide the applicant with a standalone, clear and conspicuous disclosure of its intention to do so, and obtain the applicant's consent:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).  Walker argues that, contrary to this provision, the  Disclosure document did not consist "solely of the disclosure" because it contained extraneous information,  particularly  about  investigative  consumer

reports, and that such extraneous information also violated the "clear and conspicuous" requirement because it rendered the Disclosure "muddled" and "confusing to consumers."[3] Thus, both the "clear and conspicuous" requirement and the "solely" requirement, also known as the "standalone requirement," are at issue. We must decide whether those requirements disallow the inclusion of any of the information included in the Disclosure.

## 1.

First, as to the standalone disclosure requirement, we noted in *Syed* that "[t]he ordinary meaning of 'solely' is '[a]lone; singly' or '[e]ntirely; exclusively,'" and we held that the standalone requirement was unambiguous and meant what it said. *Syed*, 853 F.3d at 500–01 (quoting American Heritage Dictionary of the English Language 1666 (5th ed. 2011)); *see Gilberg*, 913 F.3d at 1175 (explaining the basis for *Syed*'s conclusion that "the statute meant what it said"). Thus, Ninth Circuit precedent reads the FCRA as mandating that a

---

[3] Because Walker signed a separate authorization form, Walker does not claim that Fred Meyer failed to properly secure his authorization to obtain a consumer report as required by 15 U.S.C. § 1681b(b)(2)(A)(ii). However, Walker does argue that the language of Fred Meyer's authorization form "underscores the confusing and distracting nature of Fred Meyer's disclosure form, thereby reinforcing Walker's claim for violation of § 1681b(b)(2)(A)(i)," i.e., his claim that the Disclosure violated the FCRA. While it may be true that the authorization form amplifies any confusion allegedly created by the Disclosure, the authorization form is not relevant to the disclosure form standard set forth in the statute where, as here, the authorization is not included in the Disclosure. Either the Disclosure meets the "clear and conspicuous" and "standalone" requirements, or it does not; that determination does not depend on what is in a separate authorization form. *See* 15 U.S.C. § 1681b(b)(2)(A).

disclosure form contain nothing more than the disclosure itself.[4]  Simply put, "the [disclosure] form should not contain any extraneous information."  *See* U.S. Fed. Trade Comm'n, Advisory Opinion to Hauxwell, 1998 WL 34323756, at *1 (June 12, 1998).[5]

---

[4] The statute provides an express exception permitting the required authorization to be included in the disclosure form as well.  That exception is not at issue here because Fred Meyer provided its authorization in a separate form.  *See* 15 U.S.C. § 1681b(b)(2)(A)(ii); *Syed*, 853 F.3d at 497, 500–01.

[5] The FTC's advisory opinions are not binding or precedential, but can provide helpful insight.  For example, the FTC has noted that "[t]he reason for requiring that the disclosure be in a standalone document is to prevent consumers from being distracted by other information side-by-side with the disclosure."  U.S. Fed. Trade Comm'n, Advisory Opinion to Leathers, 1998 WL 34323725, at *1 (Sept. 9, 1998).  As the FTC explained:

> [W]e believe that it was the intent of the drafters to assure that the required disclosure appear conspicuously in a document unencumbered by any other information. The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure . . . will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure.  However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.

U.S. Fed. Trade Comm'n, Advisory Opinion to Steer, 1997 WL 33791227, at *1 (Oct. 21, 1997).

Here, the district court held, based on several district court opinions and FTC advisory opinions, that Fred Meyer's disclosure complied with the FCRA's standalone requirement because "some additional information" may be included in an FCRA disclosure, as long as the information is "closely related to the FCRA disclosure," and focuses the applicant's attention on the FCRA disclosure rather than detracting from it. After this case was appealed, however, the Ninth Circuit decided *Gilberg*, which forecloses the district court's interpretation that the FCRA contains an implied exception allowing the inclusion of information that is "closely related" to the disclosure. *See Gilberg*, 913 F.3d at 1176 (explaining that *Syed* "forecloses" such an approach and suggesting that, in any case, such a standard would be difficult to implement, and would be inappropriate because "even 'related' information may distract or confuse the reader").[6]

In light of *Gilberg*, a disclosure form violates the FCRA's standalone requirement if it contains any extraneous information beyond the disclosure required by the FCRA.

---

[6] Specifically, the *Gilberg* court read *Syed* as signaling that the FCRA "should not be read to have implied exceptions," especially when an exception would be contrary to the FCRA's purpose. *Id.* at 1175 (citing *Syed*, 853 F.3d at 501–03); *see also Syed*, 853 F.3d at 501 (explaining that, "in light of Congress's express grant of permission for the inclusion of an authorization, the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions," and noting that "[a]n implied exception to an express statute is justifiable only when it comports with the basic purpose of the statute"). *Gilberg* then went on to hold that, even where a defendant argues that any additional information in its disclosure form is consistent with the congressional purpose of the FCRA, "purpose does not override plain meaning," and the meaning of "solely" is plain. 913 F.3d at 1175. As a result, the *Gilberg* court concluded that "*Syed* holds that the standalone requirement forecloses implicit exceptions." *Id.* at 1176.

*See Gilberg*, 913 F.3d at 1176 (holding that the defendant violated the standalone requirement where its disclosure "contain[ed] extraneous and irrelevant information beyond what [the] FCRA itself requires"). As Fred Meyer points out, if an FCRA disclosure may only contain the disclosure that is required by the statute, the question then becomes what language counts as part of the "disclosure" itself. The statute requires a standalone "disclosure . . . that a consumer report may be obtained for employment purposes," but does not further define the term "disclosure" or explain what information can be considered part of that "disclosure" for purposes of the standalone requirement. *See* 15 U.S.C. §§ 1681a, 1681b(b)(2)(A)(i).

We now hold that beyond a plain statement disclosing "that a consumer report may be obtained for employment purposes," some concise explanation of what that phrase means may be included as part of the "disclosure" required by § 1681b(b)(2)(A)(i). For example, a company could briefly describe what a "consumer report" entails,[7] how it will be "obtained," and for which type of "employment purposes" it

---

[7] Such an allowance for a brief description of consumer reports would align with prior FTC guidance. In its advisory opinion to Coffey, the FTC explained:

> It is our view that Congress intended that the disclosure not be encumbered with extraneous information. However, some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure.

Fed. Trade Comm'n, Advisory Opinion to Coffey, 1998 WL 34323748, at *2 (Feb. 11, 1998).

may be used.**[8]**  *See* 15 U.S.C. § 1681b(b)(2)(A)(i).  Such information would further the purpose of the disclosure by helping the consumer understand the disclosure.  *See Syed*, 853 F.3d at 501 (noting that Congress' purpose to protect consumers from improper invasions of privacy would be frustrated in the absence of a clear disclosure because job applicants would not understand what they were authorizing).

With this standard in mind, we turn to the text of the Disclosure to determine whether it impermissibly contained extraneous information beyond the § 1681b(b)(2)(A)(i) disclosure itself.  The first paragraph provides:

> We ([t]he Kroger family of companies) will obtain one or more consumer reports or investigative consumer reports (or both) about you for employment purposes. These purposes may include hiring, contract, assignment, promotion, reassignment, and termination. The reports will include information about your character, general reputation, personal characteristics, and mode of living.

This language provides the required disclosure that consumer reports may be obtained for employment purposes, *see id.*, and then, in accordance with the standard we set forth above, helpfully explains what those "employment purposes" may

---

**[8]** Of course, any such explanation should not be confusing or so extensive as to detract from the disclosure.  In other words, it must still meet the separate "clear and conspicuous" requirement, discussed further below.  *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

include and what type of information may be included in the "consumer report."**⁹**

Walker argues that the first paragraph of Fred Meyer's Disclosure nonetheless violates the FCRA's standalone disclosure requirement because it mentions investigative consumer reports in addition to consumer reports; he contends that information about investigative consumer reports qualifies as impermissible extraneous information. We disagree. The FCRA defines an investigative consumer report as "*a consumer report or portion thereof* in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer . . . ." 15 U.S.C. § 1681a(e) (emphasis added). Because investigative reports are a subcategory or specific type of consumer report, disclosing that an investigative consumer report may be obtained for employment purposes does not violate the FCRA's mandate that nothing be included in the disclosure document other than a "disclosure . . . that a consumer report will be obtained for employment

---

**⁹** The Disclosure's language explaining that reports will include information about the consumer's "character, general reputation, personal characteristics, and mode of living" tracks the language of the FCRA. The FCRA defines "consumer report" as concerning "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, *character, general reputation, personal characteristics, or mode of living*." 15 U.S.C. § 1681a(d)(1) (emphasis added); *see also id.* § 1681a(e) (stating that investigative consumer reports also concern information about a consumer's "character, general reputation, personal characteristics, or mode of living").

purposes."[10]  *See* 15 U.S.C. § 1681b(b)(2)(A)(i).  As long as the information about investigative reports is limited to disclosing that such reports may be obtained for employment purposes, and providing a very brief description of what that means, the inclusion of such information in a § 1681b(b)(2)(A)(i) disclosure does not run afoul of the standalone requirement.  *Accord* Fed. Trade Comm'n, Advisory Opinion to Willner, 1999 WL 33932153, at *1, *2 (Mar. 25, 1999) (noting that the § 1681b(b)(2)(A) disclosure "includes all types of consumer reports (including, but not limited to, investigative reports)" and suggesting that it could therefore include a "very limited" and "brief" disclosure regarding investigative consumer reports specifically).  For the foregoing reasons, the first paragraph of Fred Meyer's disclosure form can be considered part of the "disclosure" itself for purposes of the FCRA's standalone requirement. *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

The second and third paragraphs of Fred Meyers' Disclosure explain:

> We will obtain these reports through a consumer reporting agency. The consumer reporting agency is General Information Services, Inc. GIS's address is P.O. Box 353, Chapin, SC 29036. GIS's telephone number is

---

[10] Of course, any discussion of investigative consumer reports must not be confusing—it is still subject to the clear and conspicuous requirement.  Thus, Walker's arguments that the disclosure statement's language confusingly "blurs the line between consumer reports and investigative reports" such that the reader cannot understand what information will be obtained about him, including by omitting any mention of credit worthiness or credit capacity in the first and third paragraphs, are better directed to the clear and conspicuous requirement.

> (866) 265-4917. GIS's website is at www.geninfo.com.
>
> To prepare the reports, GIS may investigate your education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record and any other information with public or private information sources.

These paragraphs elucidate what it means to "obtain" a consumer report by providing helpful information about who will provide such a report to Fred Meyer and what private and public information about the applicant will be examined to create a "consumer report." As a result, this language also does not violate the FCRA's requirement that the disclosure consist solely of a "disclosure . . . that a consumer report will be obtained for employment purposes."[11] *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

Finally, the fourth and fifth paragraphs of Fred Meyer's Disclosure inform the consumer that:

> You may inspect GIS's files about you (in person, by mail, or by phone) by providing identification to GIS. If you do, GIS will provide you help to understand the files, including communication with trained personnel and an explanation of any codes. Another person may accompany you by providing identification.

---

[11] *See* footnote 10, *supra.*

> If GIS obtains any information by interview, you have the right to obtain a complete and accurate disclosure of the scope and nature of the investigation performed.

These paragraphs appear to have been included in good faith in order to provide additional useful information about an applicant's rights to obtain and inspect information about GIS' investigation of, and file about, the applicant. This language, however, may "pull[] the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights" that he has to inspect GIS's files. *See Syed*, 853 F.3d at 502; *see also Gilberg*, 913 F.3d at 1175–76 (noting that additional information about rights under state laws, and references to extraneous documents like a summary of rights under the FCRA, was "as likely to confuse as it [wa]s to inform," and holding that the inclusion of such information violated the standalone disclosure requirement). Thus, while we understand Fred Meyer's reason for providing this information to job applicants, we hold that it should have been provided in a separate document, because the information cannot reasonably be deemed part of a "disclosure . . . that a consumer report will be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).

Because this additional information means that the Disclosure does not "consist[] solely of the disclosure," we hold that the fourth and fifth paragraphs of the Disclosure violate the FCRA's standalone disclosure requirement.

**2.**

Second, as to the "clear and conspicuous" requirement, we explained in *Gilberg* that "clear means 'reasonably understandable'" and "[c]onspicuous means 'readily noticeable to the consumer'" in this context. *Gilberg*, 913 F.3d at 1176 (quoting *Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010), and adopting its "clear and conspicuous" analysis from the Truth In Lending Act context). The *Gilberg* court assumed, without deciding, "that clarity and conspicuousness under [the] FCRA present questions of law rather than fact." *Id.* at 1177. The Court then held that the defendant's disclosure form was not clear because it "contain[ed] language that a reasonable person would not understand" and "would confuse a reasonable reader because it combine[d] federal and state disclosures." *Id.*

Here, despite the fact that *Syed* made clear that the "standalone" and "clear and conspicuous" requirements are distinct, the district court did not explicitly address whether the Disclosure was "clear and conspicuous," instead focusing exclusively on the standalone requirement. *See Syed*, 853 F.3d at 503 ("[T]he question of whether a disclosure is 'clear and conspicuous' within the meaning of Section 1681b(b)(2)(A)(i) is separate from the question of whether a document consists 'solely' of a disclosure . . . ."). Regardless, because *Gilberg* was not decided until after the district court issued its order, the district court did not have an opportunity to analyze the Disclosure under the "clear and conspicuous" standard set forth in *Gilberg*. Nor did the

parties have the opportunity fully to brief that standard on appeal, due to the timing of *Gilberg*.[12]

As a result of these circumstances—and because Walker's arguments about lack of clarity are not addressed by *Gilberg*—we decline to reach the issue of whether the first through third paragraphs of the Disclosure satisfy the FCRA's "clear and conspicuous" requirement.[13]   *See* 15 U.S.C. § 1681b(b)(2)(A)(i).   We leave it to the district court to determine in the first instance whether the language of those paragraphs is sufficiently clear under the reasonable person standard set forth in *Gilberg*.[14]

## B.

The FCRA mandates that, before an employer may take adverse action against an employee or job applicant based on a consumer report, the employer must provide the consumer with "a copy of the report" and "a description in writing of the rights of the consumer . . . as prescribed by the Bureau [of Consumer Financial Protection] under section 1681g(c)(3) of this title."   15 U.S.C. § 1681b(b)(3)(A).   According to Walker, "[o]ne of these rights, mentioned explicitly in the

---

[12] Walker's opening brief was filed before *Gilberg* was decided, and therefore does not address *Gilberg*'s "clear and conspicuous" standard.

[13] Walker's arguments have to do more with lack of clarity from omitting, misrepresenting, or failing to explain certain information than with lack of clarity from the actual language used in the information provided.  *See Gilberg*, 913 F.3d at 1177.

[14] As in *Gilberg*, we do not decide whether the disclosure's clarity under the FCRA presents a question of law or fact.  *See Gilberg*, 913 F.3d at 1177.

statute, is the right to dispute the information contained in the report." (Citing 15 U.S.C. § 1681b(b)(3)(B)(i)(IV).) Walker contends that the right to dispute encompasses not just an opportunity to correct erroneous information in a consumer report, but also an opportunity to discuss the report with a current or prospective employer—that is, an opportunity to change the employer's mind—before adverse action is taken. Because Fred Meyer's pre-adverse action notice did not advise Walker of a right to speak directly with Fred Meyer—rather than with GIS[15]—about any negative items in his consumer report, Walker argues that Fred Meyer's pre-adverse action notice violated the FCRA. The district court concluded that the FCRA provides no right or requirement that a pre-adverse action notice include information about contacting a consumer's employer directly. Thus, the crux of the issue is the substantive extent of any right to dispute that the FCRA may provide, which § 1681b(b)(3)(A)(ii) would require be included in the summary of rights that accompanies a pre-adverse action notice from an employer.

To assess Walker's argument, we must look to the statute. We conclude that while the FCRA does provide a right to dispute inaccurate information in a consumer report, Walker's interpretation that such a right mandates an opportunity for Walker to discuss his consumer report with Fred Meyer directly is unsupported by the text of the FCRA. First, the language of § 1681b(b)(3)(B)(i)(IV)—the provision

---

[15] Walker argues that delegating discussion of his consumer report to GIS, a third party that has "no authority or ability to reconsider the planned adverse action," is "purely perfunctory and contravenes the purpose of the pre-adverse action notice requirement." He advocates an interpretation of the FCRA that would require a pre-adverse action notice to notify recipients of a "right to dispute inaccuracies or discuss the report with the party tasked with making the employment decision."

that Walker cites as providing the relevant right to dispute—undermines Walker's argument that the right to dispute requires more than an opportunity to interact with a third party like GIS. That provision requires, in certain circumstances, that an employer taking adverse action provide notice "that the consumer may . . . dispute *with the consumer reporting agency* the accuracy or completeness of any information in a report." *Id.* (emphasis added). By its text, this provision thus only requires notice of an opportunity for Walker to dispute his report with GIS, the consumer reporting agency—not with Fred Meyer directly.

Walker's reliance on this provision is also unavailing because it likely does not apply to him. Subparagraph C provides that the cited notice requirement in subparagraph B shall apply "only if . . . the consumer is applying for a position over which the Secretary of Transportation has the power to establish qualifications and maximum hours of service . . . or a position subject to safety regulation by a State transportation agency; *and* . . . as of the time at which the person procures the report or causes the report to be procured the only interaction between the consumer and the person in connection with that employment application has been by mail, telephone, computer, or other similar means." 15 U.S.C. § 1681b(b)(3)(C) (emphasis added). Walker, however, alleged that his "job was not one regulated by the Department of Transportation."

Nor do the other relevant FCRA provisions provide a right to discuss a consumer report directly with an employer prior to adverse action. As discussed above, 15 U.S.C. § 1681b(b)(3)(A) mandates that, before an employer may take adverse action against an employee or job applicant based on a consumer report, the employer must provide the

consumer with "a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title."   15 U.S.C. § 1681b(b)(3)(A).   In turn, the referenced § 1681g(c) provides that the summary of rights shall include, among other things, a description of "the right of a consumer to dispute information in the file of the consumer under section 1681i of this title." *Id.* § 1681g(c)(1)(B)(iii). Section 1681i, in turn, deals with the procedures that must be followed when a consumer seeks to dispute with a consumer reporting agency the completeness or accuracy of any item of information contained in the consumer's file at the consumer reporting agency. *See id.* § 1681i ("Procedure in case of disputed accuracy"); *see also id.* § 1681m(a)(4)(B) (requiring, if adverse action is taken against a consumer, an employer to provide "notice of the consumer's right . . . to dispute, under section 1681i of this title, *with a consumer reporting agency* the accuracy or completeness of any information in a consumer report furnished by the agency" (emphasis added)). Section 1681i, however, does not provide any rights or procedures for discussing a report directly with an employer.[16] *See generally id.* § 1681i.  Nor does Walker cite any other provision that does so.

Beyond failing to cite a particular provision of the FCRA that establishes a right to dispute a report with an employer directly, as opposed to with a consumer reporting agency, Walker also does not cite any binding case law that suggests that the right to dispute is broader than what is set forth in the

---

[16] Even in its provisions that discuss the deletion of disputed or inaccurate information, § 1681i states that the consumer reporting agency must notify employers that information has been deleted only if the consumer makes a request that it do so. *See id.* § 1681i(d).

statute.  To support his argument, Walker cites several district court cases and FTC advisory opinions, but none of these sources is binding.  Moreover, while Walker quotes some favorable language from these sources, the cited materials do not directly address the precise  issue raised here, nor do they explicitly hold that the right to dispute includes a right to discuss an accurate but negative consumer report directly with one's employer. *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 637–38 (E.D. Va. 2016) (citing to 15 U.S.C. § 1681b(b)(3) and holding that the plaintiff had alleged concrete injuries on behalf of an adverse action sub-class because, where the defendants had "[taken] adverse employment action without providing the information guaranteed by the statute," the sub-class members were "deprived of the opportunity to explain any negative records in their consumer reports and discuss the issues raised in their reports with Defendants before suffering adverse employment action"); *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 633–34 (D. Or. 2015) (explaining, for purposes of class certification motion in a case where defendant failed to provide plaintiff any pre-adverse action notice, that the FCRA requires an employer to provide a pre-adverse action notice far enough in advance before taking adverse action to give the applicant a "real" opportunity to respond and "meaningfully contest or explain the contents of the report" so that the applicant may attempt to "change the employer's mind"); U.S. Fed. Trade Comm'n, Advisory Opinion to Lewis, 1998 WL 34323760, at *1 (June 11, 1998) (referencing, in the context of addressing "how long . . . the employer [must] wait after providing a copy of the report before taking the adverse action," that the purpose of the relevant provisions is "to allow consumers to discuss the report with employers before adverse action is taken"); U.S. Fed. Trade Comm'n, Advisory Opinion to Coffey, 1998 WL34323748, at *2  (same); U.S.

Fed. Trade Comm'n, Advisory Opinion to Weisberg, 1997 WL 33791228, at *1 (June 27, 1997) (noting that "[t]he dispute rights are among the most important the FCRA gives to consumers," but referencing "the consumer's right to dispute inaccurate or incomplete information *with the [consumer reporting agency]*" (emphasis added)).[17]

In short, Walker does not show that, despite the seemingly unambiguous text of the statute, there is precedent that nonetheless requires that a consumer be given an opportunity to discuss his consumer report directly with his employer prior to adverse action. In fact, our cases and various legislative history materials track the language of the statute and indicate that the FCRA's right to dispute was aimed at correcting errors in consumer reports, which perhaps explains why the statute provides a right to dispute inaccuracies with the consumer reporting agency, but does not explicitly require an opportunity to discuss the report with the employer itself.

For example, we have explained that the FRCA's disclosure provision, 15 U.S.C. § 1681b(b)(2)(A), "promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors in the report before the employer decides against hiring the applicant on the basis of information contained in the report." *Syed*, 853 F.3d at 497. We noted that "[t]his opportunity is particularly important given that, in practice, the FCRA does not otherwise provide an opportunity for a job applicant or

---

[17] Here, the parties did not raise, and we therefore do not decide, whether an employer must wait a reasonable period of time after sending a pre-adverse action notice before making a final decision and taking adverse action. *See, e.g.*, *Magallon*, 311 F.R.D. at 633–34.

employee to dispute his consumer report before adverse action is taken." *Id.* at 497 n.2.

Similarly, the legislative history explains that "[t]he driving force behind the [1996 amendments to the FCRA] was the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected." S. Rep. No. 108-166, at 5–6 (2003). To address this issue, the FCRA amendments "require[d] that employers, before taking an adverse action based on a consumer report, provide the current or prospective employee with . . . a reasonable opportunity to respond to any information that is disputed by the consumer." S. Rep. No. 104-185, at 35 (1995); *see also* H.R. Rep. No. 103-486 (1994) (explaining same under "Explanation of Legislation" – Section 103 – "Employment Purposes"). These sources, however, do not mention any right to discuss directly with an employer a consumer report that is accurate but contains negative information.

Because the text of the statute, the legislative history, and our precedent do not require that a consumer be provided an opportunity to discuss his consumer report directly with his employer before adverse action is taken against him, we hold that the pre-adverse action notice that Walker received did not violate the FCRA.

## IV.

Because the fourth and fifth paragraphs of the Disclosure violate the FCRA's standalone disclosure requirement, we reverse the district court's dismissal of Walker's claim under 15 U.S.C. § 1681b(b)(2)(A). We leave for the district court

to decide in the first instance whether the remaining language of the   Disclosure satisfies the separate "clear and conspicuous" requirement provided in that same section.  We affirm, however, the district court's dismissal of Walker's pre-adverse action notice claim under 15 U.S.C. § 1681b(b)(3)(A), because no authority provides the alleged right on which that claim rests.

**AFFIRMED in part, REVERSED in part, and REMANDED.**  No Costs.