**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DOES, John and Jane, 1–134,
*Plaintiff-Appellant*,

v.

LAWRENCE WASDEN, Attorney
General of the State of Idaho; KEVIN
KEMPF, Director of the Idaho
Department of Correction; TERRY
KIRKHAM, Chief Department of
Correction Probation and Parole
Division; JON BURNHAM, Sexual
Offender Management Board;
MICHAEL JOHNSTON, Ph.d., Sexual
Offender Management Board;
MOIRA LYNCH, Sexual Offender
Management Board; JEFFREY BETTS,
Sexual Offender Management
Board; ERWIN SONNENBERG, Sexual
Offender Management Board; JEAN
FISHER, Sexual Offender
Management Board; PAULA GARAY,
Sexual Offender Management
Board; KIMBERLY SIMMONS, Sexual
Offender Management Board;
WILLIAM CRAWFORD, Sexual
Offender Management Board;
CHRISTINA IVERSON, Sexual
Offender Management Board;

No. 19-35391

D.C. No.
1:16-cv-00429-
DCN

OPINION

RALPH POWELL, Sexual Offender
Management Board; MATTHEW
THOMAS, Sheriff, Sexual Offender
Management Board; STEPHEN
BARTLETT, Ada County Sheriff;
LORIN NIELSEN, Bannock County
Sheriff; BRENT T. BUNN, Bear Lake
County Sheriff; CRAIG T. ROWLAND,
Bingham County Sheriff; PAUL J.
WILDE, Bonneville County Sheriff;
KIERNAN DONAHUE, Canyon County
Sheriff; MICHAEL HADERLIE,
Caribou County Sheriff; JAY
HEWARD, Cassia County Sheriff;
RICK LAYHER, Elmore County
Sheriff; DAVID FRYAR, Franklin
County Sheriff; CHARLES ROLLAND,
Gem County Sheriff; SHAWN
GOUGH, Gooding County Sheriff;
STEVE ANDERSON, Jefferson County
Sheriff; DOUG MCFALL, Jerome
County Sheriff; LYNN BOWERMAN,
Lemhi County Sheriff; KEVIN ELLIS,
Lincoln County Sheriff; ERIC SNARR,
Minidoka County Sheriff; JOE
RODRIGUEZ, Nez Perce County
Sheriff; TOM CARTER, Twin Falls
County Sheriff; PATTI BOLEN, Valley
County Sheriff; SEXUAL OFFENDER
MANAGEMENT BOARD; TONY
LIFORD, Teton County Sheriff; JIM
KACQMAREK, Boise County Sheriff;
CHRIS GOETZ, Clearwater County
Sheriff; BEN WOLFINGER, Kootenai

County Sheriff; RICHARD SKILES,
Latah County Sheriff,
*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Idaho
David C. Nye, Chief District Judge, Presiding

Submitted May 12, 2020[*]
Portland, Oregon

Filed December 9, 2020

Before:  Jay S. Bybee and Lawrence J. VanDyke, Circuit
Judges, and Kathleen Cardone,[**] District Judge.

Opinion by Judge Cardone;
Partial Concurrence and Partial Dissent by Judge VanDyke

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

## SUMMARY[***]

### Civil Rights

The panel reversed in part and affirmed in part the district court's dismissal of an action alleging that the retroactive application of Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act, Idaho Code § 18-8301, *et seq.,* is unconstitutional.

The panel held that the district court erred in dismissing the ex post facto claim on the basis that SORA was civil in intent and not punitive in effect. Specifically, the panel held that the district court erred by (1) construing appellants' ex post facto claim as an as-applied challenge; (2) applying the "clearest proof" standard at the motion to dismiss stage; and (3) finding the outcome of the *Smith v. Doe*, 538 U.S. 84 (2003) factors analysis to be controlled by precedent. Thus, the panel held that to survive a motion to dismiss, appellants only had to plausibly allege that the amended SORA, on its face, was punitive in effect and case law did not foreclose a finding that SORA was punitive. Because the district court's erroneous ex post facto analysis was incorporated as the sole basis for dismissing appellants' Eighth Amendment and double jeopardy claims, the panel held that the district court erred by dismissing those claims as well.

The panel held that the district court erred in dismissing the free exercise claim under Idaho's Free Exercise of Religion Protected Act ("FERPA"). The panel held that by alleging that SORA's amendments have, in fact, prevented

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

some of the appellants from attending their houses of worship, appellants plausibly alleged that their free exercise of religion was substantially burdened in violation of FERPA.

The panel found no error in the district court's analysis of appellants' vagueness, Free Association, Equal Protection, Contracts Clause, Takings, Separation of Powers, and state Police Power challenges, and affirmed the dismissal of those claims.

Dissenting in part and concurring in part, Judge VanDyke stated that he could not join in the portions of the majority's decision that raised dispositive arguments sua sponte and revived repeatedly waived arguments. He therefore dissented from the majority's conclusions on the ex post facto, FERPA, and cruel and unusual punishment claims, except with respect to the holding that circuit precedent did not necessarily foreclose appellants' claim that Idaho's SORA could be punitive in effect. Judge VanDyke concurred with the majority's affirmance of the dismissal of appellants' remaining claims.

## COUNSEL

Greg J. Fuller, Fuller Law Offices, Twin Falls, Idaho, for Plaintiffs-Appellants.

Lawrence G. Wasden, Attorney General; Chris Kronberg, Deputy Attorney General; Office of the Attorney General, Boise, Idaho; for Defendants-Appellees.

**OPINION**

CARDONE, District Judge:

Appellants, 134 men and women registered as sex offenders in Idaho, claim that the retroactive application of Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act, Idaho Code § 18-8301, *et seq.* ("SORA") is unconstitutional.  According to the First Amended Complaint, a series of amendments to SORA have heightened registrants' registration and notification obligations and imposed direct restrictions on registrants' movement, housing, and employment.  Further, all amendments to SORA have been applied retroactively to all Idaho sex offender registrants.  Appellants argue that these retroactively imposed provisions are unconstitutional, in part because they violate the Ex Post Facto Clause and the Free Exercise Clause.  The district court granted Appellees' motions to dismiss, dismissing all of Appellants' claims. Because we find the district court erred in dismissing the ex post facto and free exercise claims, we reverse in part. Additionally, because the district court predicated its dismissal of the Eighth Amendment and double jeopardy claims on its dismissal of the ex post facto claim, we hold that those judgments were also in error, though we reserve judgment on the merits of those claims.

**FACTUAL AND PROCEDURAL HISTORY**

The state of Idaho began requiring sex offender registration in July 1993.  It initially imposed only a duty for persons convicted of certain felony sex crimes to register with their local sheriff.  In 1998, Idaho passed SORA, imposing the more expansive framework still in place today, designed to create public access to information about persons convicted of sexual offenses.

In addition to creating a central registry of public sex offender information, SORA expanded the category of offenders required to register, codifying a catalog of eligible offenses in Idaho Code § 18-8304.  The 1998 version of SORA required all registrants to undergo a "psychosexual evaluation."  Registrants convicted of a subcategory of offenses, listed in Idaho Code § 18-8312, and found to pose such a risk based on their evaluation, were deemed "violent sexual predators."  All registrants, except for violent sexual predators, were eligible to petition the district court for a show cause hearing to determine whether the person could be exempted from the registration requirements and its obligations after a ten-year period of registration.  Violations of registry requirements could result in felony offenses punishable by up to five years of incarceration and a $5,000 fine.  If a registrant was on some form of supervised release at the time of a registry violation, punishment for a registration violation could include revocation of release and reinstatement of the underlying sentence.

The 1998 act was applied retroactively to any person convicted of a newly-eligible offense after July 1, 1993.  The act was also applied retroactively to anyone who entered the state of Idaho after July 1, 1993, who had been convicted of any crime that was "substantially equivalent" to the act's listed offenses.  After the 1998 amendments, the Idaho legislature amended SORA in 2001, 2002, 2004, 2005, 2006, 2008, 2009, 2010, 2011, 2012, and 2013.  Each set of amendments was applied retroactively in the same manner as the 1998 act.

In general, these amendments expanded SORA's framework, adding to the list of eligible offenses and heightening the obligations of registration.  Appellants emphasize certain changes as particularly significant.  In

2001, a new category of "aggravated offenses" was codified, covering a subset of the eligible offenses as well as any eligible offense committed against a victim under the age of thirteen. Registrants convicted of an aggravated offense were made ineligible to petition for removal from the registry. The 2006 amendments added Idaho Code § 18-8329. This provision made it a misdemeanor offense for any registrant to be on or within 500 feet of school buildings and grounds when children under the age of eighteen are present. Some exceptions to the rule were also created, such as for when registrants are students at the school or transporting their own child to and from school. This rule also applies to where registrants may reside, unless the registrant's residence was established prior to July 1, 2006. Appellants allege that the rule severely restricts their access to housing and choice of employment, among other effects.

SORA was significantly amended again in 2011. As in prior years, new offenses were added to the list of crimes requiring registration. There was also a significant increase in the amount of information required at registration and a decrease in the amount of time provided to comply. And, registrants were newly required to provide advance notice of any travel lasting longer than seven days, and to provide in-person notice of their presence to law enforcement in the jurisdictions they travel to.

Further, the 2011 amendments altered the role of individualized review within the framework. The entity previously known as the "Sex Offender Classification Board"—responsible for evaluating the risk of offenders and classifying "violent sexual predators"—was renamed as the "Sex Offender Management Board." The provisions charging the Board with evaluating the risk posed by offenders were struck, and the Board's authority was instead

defined as "the advancement and oversight of sexual offender management policies and practices statewide." The provision requiring a "psychosexual evaluation" was made discretionary, and the term "violent sexual predator" was redefined to mean only those previously designated as such by the former Classification Board.

Finally, the 2011 amendments restated SORA's registration period, making the default term for all registrants "for life." Eligibility to petition for removal after ten years was previously the default, with lifetime registration listed as the exception. After the 2011 amendments, the petition right is instead listed as the exception from the lifetime default, and is available only for those registrants who are not recidivists, not convicted of an aggravated offense, and not previously deemed violent sexual predators.

To summarize, when SORA was initially enacted in 1998, it required individualized risk evaluation of each registrant, with only those classified as violent sexual predators ineligible to petition for removal. As amended, SORA instead categorizes registrants based on the offense of conviction, either aggravated or non-aggravated. The default registration term is "for life," but with those convicted of non-aggravated offenses eligible to petition for removal after ten years.

Appellants are a group of men and women who are required to register as sex offenders in Idaho. While Appellants' circumstances vary, all were previously not required to register or were eligible to petition for removal from registration after ten years. Then, due to retroactive amendments to SORA, Appellants have all been required to register and stripped of any eligibility for removal, instead subject to lifetime registration. As a result, Appellants must

comply with SORA's heightened reporting obligations and restrictions on housing, travel, and employment.

Appellants allege a series of effects caused by the retroactive application of SORA's amendments. They allege that SORA severely limits "their ability to direct the upbringing of their children, find housing and employment, get an education, travel, engage in free speech activities (including use of the Internet), be free from harassment and stigma, and understand what is required of them under the statute." They also allege that SORA's restrictions do not serve to ensure public safety or to reduce recidivism by registrants.

Appellants filed suit against a variety of Idaho government officials and entities, claiming that SORA was unconstitutional on several grounds. Specifically, Appellants claimed that SORA was unconstitutionally vague; violated their First Amendment right to free exercise of religion; violated their substantive due process rights under the Fourteenth Amendment by impinging on free association, travel, and parenting; violated their Fourteenth Amendment right to equal protection; violated the Eighth Amendment as cruel and unusual punishment; violated the Ex Post Facto Clause; violated the Double Jeopardy Clause; violated the Contracts Clause; violated the Takings Clause; violated the Idaho state constitution's separation-of-powers provision and police power provision; and violated Idaho's contracts clause.

Appellees filed a Rule 12(b)(6) motion to dismiss all of Appellants' claims. The district court, finding that SORA has a "plainly legitimate sweep," dismissed all of Appellants' claims with prejudice to the extent they were alleged as facial challenges to SORA. Then, the district court found that Appellants "have not pleaded any specific

as-applied challenges." The Court dismissed without prejudice Appellants' vagueness, free association, free exercise, substantive due process, cruel and unusual punishment, ex post facto, double jeopardy, contracts, and separation-of-powers claims, allowing Appellants to replead those claims as explicitly as-applied challenges with "specific plaintiff/s and specific facts." The Court dismissed with prejudice the equal protection, takings, and state police powers claims "because even an as-applied challenge would fail."

Appellants refiled their Complaint with more detailed factual allegations regarding twelve of the 134 John and Jane Does. The district court found that "[e]ven with the detail added for each of the twelve Does, . . . the Second Amended Complaint still fails to state a plausible claim upon which relief can be granted." Accordingly, the district court dismissed all of Appellants' remaining claims with prejudice. Appellants timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020). Because we are reviewing a dismissal for failure to state a claim, we review the district court's decision *de novo*. *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020). We accept the factual allegations of the complaint as true and construe the pleadings in the light most favorable to the plaintiffs. *See id.*

## DISCUSSION

We find that the district court erred in dismissing (1) Appellants' ex post facto claim and (2) Appellants' free exercise claim.

## A

Appellants contend that the district court erred in granting Appellees' motions to dismiss as to Appellants' ex post facto challenge to SORA. On Appellees' first motion to dismiss, the court dismissed Appellants' facial ex post facto challenge with prejudice, finding it squarely foreclosed by the Supreme Court decision in *Smith v. Doe*, 538 U.S. 84 (2003), and Ninth Circuit cases following *Smith*. The district court granted Appellants leave to amend only to assert an as-applied ex post facto challenge. On Appellees' second motion to dismiss, the district court dismissed Appellants' as-applied ex post facto claim, finding that SORA is civil in intent and not punitive in effect. Further, the district court then dismissed Appellants' Eighth Amendment and double jeopardy challenges on the same basis, without further analysis, because those claims turn on the same punitive effects inquiry.

The district court erred in construing Appellants' ex post facto claim as an as-applied challenge. It also erred by applying the "clearest proof" standard at the motion to dismiss stage. Finally, it erred in finding the outcome of the *Smith* factors analysis controlled by precedent. We discuss each error in turn.

First, in *Seling v. Young*, 531 U.S. 250 (2001), the Supreme Court held that ex post facto claims based on the punitive effect of purportedly civil statutes cannot be construed as "as-applied" challenges. *Id.* at 263–65; *Young v. Weston*, 344 F.3d 973, 976 (9th Cir. 2003). Rather, courts must evaluate a law's punitive effect based on a variety of factors—such as the terms of the statute, the obligations it imposes, and the practical and foreseeable consequences of those obligations—in relation to the statute on its face. *See Seling*, 531 U.S. at 262; *Young*, 344 F.3d at 976. Therefore,

to establish a claim, a plaintiff need not present evidence regarding the effects of the statute as applied to him. *See Young*, 344 F.3d at 976. Yet, the district court looked to SORA's effects on the Appellants individually, finding that their allegations failed to meet the "clearest proof" standard. Thus, the district court erred by considering Appellants' claim as an as-applied challenge.

Second, the "clearest proof" standard refers to a plaintiff's ultimate burden to sustain an ex post facto challenge. When a statute is expressly civil in intent, the Supreme Court has stated that only the clearest proof is sufficient to override the legislature's intent and render the putatively civil regulation a criminal penalty. *Smith*, 538 U.S. at 92. To survive a motion to dismiss, however, Appellants only had to plausibly allege that the amended SORA, on its face, is punitive in effect. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Daniel v. Fulwood*, 766 F.3d 57, 61–62 (D.C. Cir. 2014) ("At the motion to dismiss stage, of course, a plaintiff need only show that his ex post facto claim—like any other claim—is 'plausible.'").

Accepting the allegations in the First Amended Complaint as true, all Appellants are retroactively subject to lifetime registration terms. By the SORA amendments, Idaho has retroactively imposed—in addition to heightened registration obligations—restrictions on housing, employment, and travel. Registrants are prohibited from being on or within 500 feet of school grounds when children under the age of eighteen are present, with some exceptions. The same restriction applies to where registrants may reside. Registrants now must provide notice to law enforcement both before and during certain kinds of travel. And, violations of SORA's procedures are punishable as criminal offenses, not unlike the conditions of supervised release.

Idaho Code § 18-8311. Indeed, in some circumstances, violations can result in revocation of probation and reinstatement of a registrant's underlying sentence. *Id.* Appellants alleged a bevy of effects caused by these retroactively imposed restrictions. The district court erred in holding these allegations to the "clearest proof" standard at the motion to dismiss stage. Instead, accepting the allegations as true, the district court must consider only whether Appellants alleged that SORA is punitive in effect. *See Iqbal*, 556 U.S. at 678; *Daniel*, 766 F.3d at 61–62.

Finally, case law does not foreclose a finding that SORA is punitive. The district court found that Appellants' claims were precluded because, under *Smith* and related Ninth Circuit cases, it was bound to conclude that the amended SORA is not punitive in effect. The court relied, in addition to *Smith*, on *Litmon v. Harris*, 768 F.3d 1237 (9th Cir. 2014), *United States v. Elk Shoulder*, 738 F.3d 948 (9th Cir. 2013), *United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012); and *ACLU v. Cortez Masto*, 670 F.3d 1046 (9th Cir. 2012). However, these cases only considered registration and notification provisions, the most common sex offender registry terms. None of these cases considered retroactively applied residency, travel, or employment restrictions, whereas the amended SORA imposes all of the above. While these related cases may provide guidance, they do not necessarily foreclose the claims in this case. *See, e.g.*, *Does #1–5 v. Snyder*, 834 F.3d 696, 705–06 (6th Cir. 2016), *cert. denied*, 138 S.Ct. 55 (2017).[1] The court should consider the

---

[1] The *Snyder* court, in sustaining an Ex Post Facto challenge, distinguished Michigan's sex offender registry law from the Alaska law at issue in *Smith*. 834 F.3d at 701–06. Like Idaho's SORA, Michigan's law imposed a restriction on where registrants could move and reside

effects of SORA's regulatory scheme, as amended and in its entirety, in determining whether it runs afoul of the Constitution.[2] *See Smith*, 538 U.S. at 97.

The dissent, relying on *United States v. Sineneng-Smith*, —U.S. —, 140 S. Ct. 1575 (2020), asserts that, by reaching these errors, we have violated the principle of party presentation. Although we acknowledge that Appellants' briefing was particularly inartful, we do not think *Sineneng-Smith* applies here, nor do we believe we have cut these challenges out of whole cloth. Appellants have clearly challenged the district court's ruling dismissing the ex post facto claim. Blue Br. 8–11; Gray Br. 7–15. Appellants initially argued before the district court that SORA violated

---

based on school zones. *See id.* at 701–02. The *Snyder* court explained why *Smith* was not controlling:

> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best—scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law.

*Id.* at 705.

[2] Other courts, when analyzing statutes with restrictions like SORA's, have found that many of the factors indicate a punitive effect. *See, e.g.*, *Snyder*, 834 F.3d at 701–05; *Doe v. State*, 111 A.3d 1077, 1094–95, 1100 (N.H. 2015); *Riley v. N.J. State Parole Bd.*, 98 A.3d 544, 558–60 (N.J. 2014); *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1025–30 (Okla. 2013); *Commonwealth v. Baker*, 295 S.W.3d 437, 444 (Ky. 2009); *State v. Letalien*, 985 A.2d 4, 22–23 (Me. 2009).

the Ex Post Facto Clause because of its punitive effects. First Am. Compl. ¶¶ 261–64; Blue Br. 4. The district court dismissed this claim with prejudice to the extent it was alleged as a facial challenge but allowed Appellants to amend their complaint to plead an as-applied challenge under the Ex Post Facto Clause. ER 67. After Appellants did so, the district court found the allegations "still fail[ed] to state a plausible claim," and dismissed the as-applied Ex Post Facto Clause claim with prejudice. ER 11–12. Appellants have appealed, *inter alia*, the district court's determination that they failed to state a claim under the Ex Post Facto Clause, which encompasses both the facial and as-applied challenges. Blue Br. 4, 8–11.

As we explained above, the district court made three errors in dismissing Appellants' claims: (1) construing Appellants' ex post facto claim as an as-applied challenge; (2) applying the "clearest proof" standard at the motion to dismiss stage; and (3) finding the outcome of the *Smith* factors analysis controlled by precedent. Although Appellants' briefing admittedly does not directly discuss the impossibility of an "as-applied" ex post facto claim, it is a longstanding principle that "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see also Thompson v. Runnels*, 705 F.3d 1089, 1098, 1099 n.4 (9th Cir. 2013) (same); *Lezama-Garcia v. Holder*, 666 F.3d 518, 535 n.15 (9th Cir. 2011) (same).

The circumstances in *Sineneng-Smith* go far beyond this principle. Sineneng-Smith was convicted of encouraging or inducing aliens to enter the United States knowing that their

entry would be unlawful in violation of 8 U.S.C. § 1324. *Sineneng-Smith*, 140 S.Ct. at 1578. Sineneng-Smith challenged her conviction in the district court on the grounds that (1) her conduct was not covered by the relevant provision, or (2) if her conduct was covered, the statute violated the Petition and Free Speech Clauses of the First Amendment as applied to her. *Id.* She advanced essentially the same arguments on appeal, *id.*, asserting the provision "is unconstitutionally vague . . . , or should rank as a content-based restraint on her speech," *id.* at 1580. Sineneng-Smith also argued that the Petition and Free Speech Clauses of the First Amendment protected her actions. *Id.*

Despite having full briefing from the parties on the raised issues, our Court ordered further briefing from three non-parties on three different issues, the first of which had never been raised by the parties: (1) overbreadth under the First Amendment; (2) vagueness under the First or Fifth Amendments; and (3) whether the provision included an implicit *mens rea* element. 140 S. Ct. at 1580–81. The parties "were permitted, but not required, to file supplemental briefs *limited to responding to any and all amicus/amici briefs*," and the parties and the amici were heard at a second oral argument before the panel. *Id.* at 1581 (internal quotation marks omitted). Effectively, it was a "do over of the appeal," *id.* at 1578, in which "the appeals panel intervened," *id.* at 1580.

As laid out above, the circumstances here are substantially different from those in *Sineneng-Smith*. Rather than "takeover" the appeal, *id.* at 1581, we have merely "identif[ied] and appl[ied] the proper construction of governing law," *Kamen*, 500 U.S. at 99, over a claim that was presented twice to the district court and briefed and argued to us. We have worked to understand the Appellants'

claims, but the Supreme Court has reminded us that "[t]he party presentation principle is supple, not ironclad." *Sineneng-Smith*, 140 S. Ct. at 1579. We do not think we have exceeded the bounds of our discretion, and "we decline the dissent's invitation to turn inartful briefing into waiver." *See United States v. McReynolds*, 964 F.3d 555, 568 (6th Cir. 2020).

For the foregoing reasons, we find that the district court erred in dismissing Appellants' ex post facto claim. Furthermore, because the ex post facto analysis that we find to be in error was incorporated as the sole basis for dismissing Appellants' Eighth Amendment and double jeopardy claims, we find the dismissal of those claims to be in error as well.

## B

Appellants also argue that the district court erred in dismissing their free exercise claim under Idaho's Free Exercise of Religion Protected Act ("FERPA"). On Appellees' first motion to dismiss, the district court dismissed Appellants' facial free exercise claim with prejudice but granted leave for Appellants to amend their as-applied claim based on FERPA. Upon Appellees' second motion to dismiss, the district court dismissed the claim again, finding that Appellants failed to assert a claim under FERPA. The district court erred in finding that Appellants alleged insufficient facts to plead a plausible FERPA claim.

FERPA, like its federal counterpart the Religious Freedom Restoration Act ("RFRA"), provides that any law that substantially burdens the free exercise of religion must be in furtherance of a compelling government interest and must be the least restrictive means of furthering that interest. *See* Idaho Code § 73-402 (2020); *State v. White*, 271 P.3d

1217, 1220 (Idaho Ct. App. 2011). FERPA's definition of a substantial burden is much broader than RFRA's, however. *State v. Cordingley*, 302 P.3d 730, 733 & n.2 (Idaho Ct. App. 2013). FERPA's substantial burden prong is governed by the "religious motivation test," the broadest of three possible tests, requiring only "that the government prevented the claimant from engaging in conduct both important to them and motivated by sincere religious belief." *Id.* at 733–34 & n.3.[3]

To survive a motion to dismiss on their FERPA claim, Appellants must have alleged facts showing that the challenged policy substantially burdens the exercise of their religious beliefs. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (en banc). Appellants have done so here by alleging in their Second Amended Complaint that SORA restricts them from attending their houses of worship, thereby inhibiting an important and sincerely motivated religious practice. *See Cordingley*, 302 P.3d at 733 & n.3.

However, the district court concluded that Appellants failed to raise FERPA in the Second Amended Complaint and dismissed the as-applied FERPA claim on that basis. The Second Amended Complaint, however, includes a Count titled "Religion" and alleges that "Idaho has substantially burdened [Appellants'] exercise of religion without demonstrating" that the burden "is both (a) essential to further a compelling governmental interest; and is (b) the

---

[3] Under RFRA, by contrast, "a 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or [are] coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069–70 (9th Cir. 2008) (en banc).

least restrictive means of furthering that compelling governmental interest." Although this language does not explicitly refer to FERPA, it tracks with the language of the statute, and the standard invoked is only available to Appellants under FERPA. *See* Idaho Code § 73-402(3)(a)–(b). Because the district court was obliged to construe the pleadings in the light most favorable to the plaintiffs, *see Walker*, 953 F.3d at 1086, it should have construed the "Religion" claim in the Second Amended Complaint as arising under FERPA.

The district court also considered the sufficiency of Appellants' allegations of a substantial burden. The district court acknowledged that several of the plaintiffs alleged that they have had to choose between attending church or risking noncompliance with SORA. But the court noted that, under Idaho Code § 18-8329(1)(a), SORA does not prohibit sex offenders from attending a church unless the church itself is used as a school and is posted with a notice to that effect. Because Appellants did not specifically allege that the churches they sought to attend were also used as schools *and* were posted with the requisite notice, the court reasoned that SORA did not, in fact, bar Appellants' attendance.

This reasoning fails to accept Appellants' allegations as true and construe the facts in the light most favorable to Appellants. For example, Appellants alleged that John Doe 117 was restricted from attending religious services under SORA on the grounds that his church also operated as a school. Accepting this allegation as true, John Doe 117's free exercise of religion was substantially burdened, even though Appellants did not specify that John Doe 117's church was posted with the requisite notice. Furthermore, the district court ignored the impact of Idaho Code § 18-8329(1)(b). That provision restricts registrants from being

within 500 feet of the property line of school grounds.  Idaho Code § 18-8329(1)(b).  Indeed, Appellants alleged that John Doe 128 was restricted from attending his church because of "the proximity of a school."  By alleging that SORA's amendments have, in fact, prevented some of the Appellants from attending their houses of worship, Appellants plausibly alleged that their free exercise of religion was substantially burdened in violation of FERPA.

Finally, in its first dismissal of Appellants' free exercise claim, the district court concluded that—even if Appellants had stated a claim—SORA's 500-foot rule is the least restrictive means for accomplishing the compelling government interest of protecting society.  The court did not discuss whether an exception for houses of worship would be a less restrictive means of achieving the governmental purpose.  "The least-restrictive-means standard is exceptionally demanding," and the government bears the burden of showing "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]."  *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)); *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005).

It is not clear from the district court's decision whether and how Appellees satisfied this burden.  In any event, at the motion to dismiss stage, Appellants only had to allege a substantial burden on their free exercise of religion that is not the least restrictive means available.  *See Greene v. Solano Cty. Jail*, 513 F.3d 982, 989 (9th Cir. 2008) (recognizing the least restrictive means inquiry as a factual issue).  Because at least some of the Appellants have done so in the Second Amended Complaint, the district court erred in dismissing all of the as-applied free exercise claims.

**CONCLUSION**

We find that the district court erred in dismissing Appellants' ex post facto and free exercise claims and, accordingly, in dismissing the Eighth Amendment and double jeopardy claims on the same basis. Because we find no error in the district court's analysis of Appellants' vagueness, Free Association, Equal Protection, Contracts Clause, Takings, Separation of Powers, and state Police Power challenges, we affirm the dismissal of those claims. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

---

VANDYKE, Circuit Judge, dissenting in part and concurring in part.

This is a difficult case, made all the more so by Appellants John and Jane Does 1–134's ("Does") woefully inadequate briefing. Despite repeated reprimands below, the Does' counsel continues to "require[] the Court to parse through pages upon pages of allegations" to decipher their actual arguments on appeal. Indeed, "[w]hen reading [the Does'] brief . . . [and the record below], one wonders if [they], in [their] own version of the 'spaghetti approach,' ha[ve] heaved the entire contents of a pot against the wall in hopes that something would stick." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Typically, "[w]e decline . . . to sort through the noodles" to craft claims for plaintiffs. *Id.* "Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an

appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." *Id.* (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Though tempting to impose credible arguments on the Does' briefing and pleadings, the Supreme Court has recently sternly warned us against doing so. As such, I cannot join in the portions of the majority's decision that raise dispositive arguments sua sponte and revive repeatedly waived arguments. But I do narrowly concur that binding precedent does not foreclose the Does' ex post facto and double jeopardy claims as pled and argued.[1]

## I. The Majority's Holding on "As-Applied" Challenges Violates the Party Presentation Principle.

The majority first errs in restructuring this appeal around an argument raised sua sponte in the opinion: that ex post facto claims based on the punitive effect of purportedly civil statutes cannot be construed as "as-applied" challenges. No party raised this argument on appeal or below, and the principle of party presentation should prohibit us from reversing on that basis.

"In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "[I]n both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). "Particularly on appeal, we have held firm against considering arguments that are not briefed." *Indep.*

---

[1] I also concur with the majority in its affirmance of the dismissal of the Does' remaining claims.

*Towers*, 350 F.3d at 929. Recently, the Supreme Court unanimously held that our court had "departed so drastically from the principle of party presentation as to constitute an abuse of discretion," *Sineneng-Smith*, 140 S. Ct. at 1578, when we identified new arguments on appeal, invited supplemental briefing on those arguments from amici, and restructured the oral argument and ultimate decision based on those arguments. *Id.* at 1580–81.

Here, the majority falls prey to the same temptations as in *Sineneng-Smith* by reshaping its decision based on an argument not raised by any party, without even the benefit of supplemental briefing. *Sineneng-Smith*, 140 S. Ct. at 1581–82, *Cf. Thompson v. Runnels*, 705 F.3d 1089, 1100 (9th Cir. 2013) ("Because the legal issue has been fully addressed by both parties, and because it is a simple and straightforward question of law, we do not abuse our discretion in addressing it."). Indeed, our court's actions in *Sineneng-Smith* were actually more defensible than the majority's here because at least in *Sineneng-Smith* our court notified the parties of the intended new direction and received supplemental briefing. But here, where neither party "so much as hint[ed]," *Sineneng-Smith*, 140 S. Ct. at 1580, "that ex post facto claims based on the punitive effect of purportedly civil statutes cannot be construed as 'as-applied' challenges," the majority is writing on an entirely clean slate without *any* input from the litigants. Having erred in *Sineneng-Smith*, we a fortiori err here.

The majority counters that it "retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*,

500 U.S. 90, 99 (1991).[2]    But *Kamen* also expressly cautioned that it did "not mean to suggest that a court of appeals should not treat an unasserted claim as waived or that the court has no discretion to deny a party the benefit of favorable legal authorities when the party fails to comply with reasonable local rules on the timely presentation of arguments." *Id*. at 100 n.5.  It should come as no surprise, then, that relying on *Sineneng-Smith*, this court has recognized that "we must adhere to 'the principle of party presentation.'  It is the parties who 'frame the issues for decision,' and we may entertain only those arguments 'bearing a fair resemblance to the case shaped by the parties.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1214 (9th Cir. 2020) (internal citation omitted) (quoting *Sineneng-Smith*, 140 S. Ct. at 1579).  Given the particularly inartful briefing in this case, including the Does' embrace of the "as-applied" challenges that the majority now explicitly rejects when ruling in their favor, adherence to the party presentation principle is especially warranted here.  This case concerns the adjudication of important rights for a whole class of people, so allowing it to proceed with such

---

[2] The majority also endeavors to distinguish *Sineneng-Smith* from the present case, but both cases present substantively similar circumstances: despite the petitioners' choice to raise certain challenges, the court opted to form its own theory of the case and resolve it on an issue that that neither party contemplated.  *Sineneng-Smith*, 140 S. Ct. at 1580–81.  The only relevant difference is that the court in *Sineneng-Smith* at least had *some* input from the parties given the supplemental briefing and argument.  *Id*. at 1581.  And this court has subsequently rejected untimely arguments pursuant to *Sineneng-Smith* in other contexts.  *See, e.g., AMA Multimedia, LLC*, 970 F.3d at 1214 ("we reject AMA's argument regarding the Privacy Shield Decision because it is unrelated 'to the case shaped by the parties'. . . . AMA had numerous opportunities to raise the Privacy Shield decision but did not do so until we ordered supplemental briefing" (quoting *Sineneng-Smith*, 140 S. Ct. at 1582)).

particularly inartful briefing runs a high risk of ultimately harming the very parties the briefing purports to protect.

## II. The Majority Misconstrues the "Clearest Proof" Standard.

The majority also errs in its treatment of the "clearest proof" standard. First, to the extent it's actually implicated in this appeal, the Does waived any challenge to the district court's application of that standard by not raising the "clearest proof" standard in their opening brief and only briefly alluding to it in their reply by block quoting a concurrence and dissent, providing no analysis. Again, "we cannot 'manufacture arguments for an appellant.'" *Indep. Towers*, 350 F.3d at 929 (quoting *Greenwood,* 28 F.3d at 977). Likewise, "[a] bare assertion of an issue does not preserve a claim." *Id.* (quoting *D.A.R.E. Am. v. Rolling Stone Magazine,* 270 F.3d 793, 793 (9th Cir. 2001)). In fairness to and consistent with our prior practice, this argument should be deemed waived.

But even if it wasn't waived, the majority incorrectly states that the district court "erred by applying the 'clearest proof' standard at the motion to dismiss stage" because "the district court must consider only whether Appellants alleged that SORA is punitive in effect." But the latter is exactly what the district court did when it concluded that "SORA *is not so punitive in effect or purpose* that it negates the Idaho legislature's intent to enact a civil regulatory scheme." The district court only later referenced in passing the clearest proof standard when discussing the Does' inability to distinguish harms suffered from those considered in previous ex post facto challenges. It was only this inability to raise new and distinguishable harms from previous ex post facto challenges considered and rejected by federal and state courts—not the Does' inability to *provide* the "clearest

proof" at the pleading stage—that the district court concluded was "fatal to their claim."

Lastly, the majority misunderstands the pleading requirements in holding that "[t]o survive a motion to dismiss . . . Appellants only had to plausibly allege that the amended SORA, on its face, is punitive in effect." Like other heightened legal thresholds, the "clearest proof" standard is best understood as referring to a *presumption* that makes it harder for plaintiffs to win their challenge. As such, the "clearest proof" standard is relevant at the motion to dismiss stage. *See Waldman v. Conway*, 871 F.3d 1283, 1294 (11th Cir. 2017) (per curiam) ("Here, taken as true, none of the allegations in [the plaintiff's] complaint would provide the 'clearest proof' necessary to override the *presumption* that Alabama's stated civil intent to protect children is actually punitive." (emphasis added)); *Does #1– 5 v. Snyder*, 834 F.3d 696, 700 (6th Cir. 2016) (recognizing that in an appeal *of a motion to dismiss*, "the test we must apply . . . is quite fixed: an ostensibly civil and regulatory law, such as SORA, does not violate the Ex Post Facto clause unless the plaintiff can show 'by the clearest proof' that 'what has been denominated a civil remedy' is, in fact, 'a criminal penalty'" (quoting *Smith v. Doe*, 538, U.S. 84, 92 (2003)); *cf. Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 470–71 (7th Cir. 2012) ("To prevail in such a facial challenge, a plaintiff must cross a high bar. . . . The district court granted the state's motion to dismiss, finding the Center could not meet these standards. We affirm."). Whatever that heightened standard is, at the motion to dismiss stage the district court is obligated to evaluate whether the plaintiffs' allegations—if true—would meet that heightened requirement. This comports with cases in our sister circuits that were dismissed based on plaintiffs' inability to appropriately plead allegations that, if true,

would satisfy the "clearest proof" standard.  *See, e.g., Does #1–7 v. Abbott*, 345 F. Supp. 3d 763, 777 (N.D. Tex. 2018) ("In light of the *Mendoza-Martinez* factors and *absent the 'clearest proof' that the effects of Chapter 62 are punitive*, the Court finds that this statute constitutes a nonpunitive civil scheme.  Thus, Plaintiffs' *Ex Post Facto* Clause Claim . . . fail[s] as a matter of law . . . ." (emphasis added)), *aff'd*, 945 F.3d 307, 311 (5th Cir. 2019) (per curiam) ("*Ex post facto*, Eighth Amendment, and double jeopardy challenges *do not cross the minimum pleading threshold* because Chapter 62 is nonpunitive." (emphasis added)); *Anderson v. Holder*, 647 F.3d 1165, 1173 (D.C. Cir. 2011) ("Anderson and his amicus have failed to show *by the clearest proof* that the effects of the law negate the Council's intention to establish a civil regulatory scheme." (emphasis added) (citation, quotations marks, and brackets omitted)); *Windwalker v. Bentley*, 925 F. Supp. 2d 1265, 1270 (N.D. Ala. 2013) (dismissing, inter alia, for failure to appropriately satisfy the clearest proof standard), *aff'd sub nom. Windwalker v. Governor of Alabama*, 579 Fed. App'x 769 (11th Cir. 2014).[3]

---

[3] The majority's citation to *Daniel v. Fulwood* in support of its holding is not to the contrary.  766 F.3d 57, 61–62 (D.C. Cir. 2014). *Daniel* has nothing to do with the "clearest proof" standard or any presumption favoring regulatory statutory schemes; it considered an ex post facto claim with regard to *parole guidelines*, which does not make a determination of punitive effects or purposes in the face of presumptively civil remedies.  *See id.* at 61 ("In order to prevail on the merits of an ex post facto claim with regard to parole guidelines, a plaintiff must show that his retroactive application of the new guidelines 'creates a significant risk of prolonging [his] incarceration' as compared to application of the prior guidelines." (quoting *Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006))).  In contexts analogous to the instant case, the D.C. Circuit affirmed dismissal of a complaint for failing to meet the heightened "clearest proof" requirement.  *See, e.g.*,

### III. The Majority Correctly Holds that Precedent Has Not Foreclosed the Claim that Idaho's SORA Is Punitive.

I do concur with the majority on the narrow point that the circuit precedent relied upon by the district court does not necessarily foreclose at this stage the claim that SORA is punitive in effect. In particular, the various cases cited by the district court do not substantively consider the ban for any registrant to be on or within 500 feet of school buildings and grounds when children under the age of 18 were present, and the employment restrictions that follow. *See generally Litmon v. Harris*, 768 F.3d 1237, 1240, 1242–43 (9th Cir. 2014) (challenging the in-person, 90-day lifetime registration requirement for sexually violent predators); *United States v. Elk Shoulder*, 738 F.3d 948, 952, 954 (9th Cir. 2013) (challenging the retroactivity of the Sex Offender Registration and Notification Act's registration requirements); *Maciel v. Cate*, 731 F.3d 928, 937 (9th Cir. 2013) (concluding in a habeas case involving in part a 2,000-foot residency restriction that under AEDPA's deferential standard of review it was nonpunitive, citing a similar restriction held to be regulatory in *Doe v. Miller*, 405 F.3d 700, 718–23 (8th Cir. 2005)); *ACLU v. Masto*, 670 F.3d 1046, 1057 (9th Cir. 2012) (challenging Nevada legislation imposing retroactive sex offender registration). Nor does any circuit precedent consider whether the cumulative effect of a mix of regulations like Idaho's might be punitive in toto.

---

*Anderson*, 647 F.3d at 1173 ("Anderson and his amicus have failed to show *by the clearest proof* that the effects of the law negate the Council's intention to establish a civil regulatory scheme." (emphasis added) (citation, quotation marks, and brackets omitted)).

Also particularly noteworthy is the fact that the plaintiffs in *Masto* initially challenged legislation prohibiting certain sex offenders from "knowingly be[ing] within 500 feet of any place" or "resid[ing] anywhere 'located within 1,000 feet of any place' that is 'designed primarily for use by or for children,'" *Masto*, 670 F.3d at 1051—but the state later represented that "it had no authority under [the legislation] to apply its movement and residency restrictions retroactively and that it will 'absolutely' not do so in the future." *Id*. at 1064–65. The court dismissed that particular aspect of the appeal as moot. *Id*. at 1067. As a consequence, not only did *Masto*'s holding pertain to a more limited subset of statutory provisions than at issue here, but the state in that case affirmatively distanced itself from defending the retroactivity of certain provisions similar to those forming part of the basis of the Does' challenges in this case.

Thus, given the above, I narrowly concur in remanding to the district court to determine whether SORA is punitive in effect and therefore violates the Ex Post Facto Clause, without the mistaken belief that it is foreclosed by binding precedent.

Similarly, as to the Does' double jeopardy claim, because the Does have incorporated their ex post facto punitive arguments with respect to their double jeopardy claim, and because the Double Jeopardy Clause analysis in this context is essentially "identical to that with respect to the Ex Post Facto Clause," *Litmon*, 768 F.3d at 1242, I concur with the majority in remanding the double jeopardy claim for the same narrow reason that I concur with respect to the Does' ex post facto claim.

**IV.    The Does Have Waived Their Cruel and Unusual Punishment Claim.**

I disagree with the majority that the Does' cruel and unusual punishment claim should be remanded.  In support of this argument on appeal, the Does proffer one conclusory statement, summarily introduce and block quote a case that has since been reversed on the Eighth Amendment claim, *see Millard v. Rankin*, 265 F. Supp. 3d 1211 (D. Colo. 2017), *rev'd sub nom. Millard v. Camper*, 971 F.3d 1174, 1186 (10th Cir. 2020), and provide no analysis or further briefing in relation to SORA or the facts of this case.  They offer no further briefing in their reply.   The Does' failure to adequately brief this issue warrants its waiver on appeal.  *See Indep. Towers*, 350 F.3d at 929; *D.A.R.E. Am.,* 270 F.3d at 793 ("We do not need to decide whether this was correct, for even if the objections were timely, D.A.R.E. and Levant's brief on appeal does not argue how resolving them would have affected the outcome.").

**V.  The Does Waived Their Idaho FERPA Claim.**

Finally, the Does have waived their Idaho Free Exercise of Religion Protected Act ("FERPA") claim.   In their pleadings, the Does include one conclusory paragraph presenting a "Religion" claim, and it is entirely unclear whether the claim is state or federal, constitutional or statutory.[4]   In their Prayer for Relief, the Does request a

---

[4] The Does' "Religion" claim states, in its entirety:

> Plaintiffs reallege and reincorporated paragraphs 6–17 as if fully set forth herein and allege that Idaho has substantially burdened their exercise of religion without demonstrating that application of the burden to the person is both (a) essential to further a

declaration that SORA violates "the First Amendment to the Constitution" *and* "the right to practice religion without governmental interference protected by the Idaho Constitution," confirming they never alleged any *state statutory* FERPA claim.

The majority holds that the Does' pleading passes muster because "it tracks with the language of the statute, and the standard invoked is only available to Appellants under FERPA," and "the district court was obliged to construe the pleadings in the light most favorable to plaintiffs." But construing the pleadings in a light most favorable to plaintiffs does not mean that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, . . . suffice"—especially when the plaintiffs failed to argue those claims before the district court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court correctly noted that the Does failed to "address FERPA in the Second Amended Complaint, in their Response to Defendant's Motion to Dismiss, or during oral argument."

Due to their failure to present any FERPA claim in their pleadings or before the district court, the Does have waived it. *Litmon*, 768 F.3d at 1244; *Silvas v. E\*Trade Morg. Corp.*, 514 F.3d 1001, 1007 (9th Cir. 2008) ("an appellate court will not consider issues that were not properly raised before the district court" (citation omitted)).

We are not at liberty to fundamentally alter the Does' poor pleading into an appropriate litigation vehicle. Because the Does failed not once, not twice, but numerous times

---

compelling governmental interest; and is (b) the least restrictive means of furthering that compelling governmental interest.

below and on appeal to allege the requisite facts or conduct the proper (or any) analysis, they have waived their FERPA claim.

* * *

For the reasons set forth herein, I respectfully dissent from the majority's conclusions on the Does' ex post facto, FERPA, and cruel and unusual punishment claims, except with respect to the holding that circuit precedent does not necessarily foreclose that Idaho's SORA could be punitive in effect. As such, I concur with the majority on remanding the Does' ex post facto and double jeopardy claims. I also concur with the majority in its affirmance of the dismissal of the Does' remaining claims.