Filed 6/27/23  Moore v. United Parcel Service CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHAWNTE MOORE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>　　　Defendant and Respondent. | A164894<br><br>(Alameda County<br>　Super. Ct. No. RG19003535) |

Plaintiff Shawnte Moore appeals from an order granting defendant United Parcel Service, Inc.'s motion for summary adjudication as to her claim under the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.; FCRA).[1] Moore alleges the trial court erred in determining willfulness as a matter of law.  The parties further dispute whether Moore has standing to bring her FCRA claim.  Even assuming Moore is entitled to amend her complaint to allege standing, we need not remand the matter because we affirm the trial court's order granting summary adjudication.

---

[1] Undesignated statutory references are to title 15 of the United States Code.

# I.

# BACKGROUND

## A. *Factual Background*

Moore applied for a part-time, seasonal position with United Parcel Service, Inc. (UPS). As part of that process, she accessed and completed certain documents through UPS's online application system (Application Center). Through the Application Center, Moore completed each document by clicking on the applicable link, which then took her to a separate webpage containing that document. She would then click a button labeled "Continue" to return to the Application Center.

One of the documents Moore completed via the Application Center was entitled "FCRA Disclosure." The disclosure contained, in relevant part, the following language: "This disclosure is being provided to you pursuant to the federal Fair Credit Reporting Act . . . . Under the FCRA, [UPS] . . . is required to make a clear and conspicuous written disclosure to you that UPS may obtain a criminal background report, employment history, driving record, education history, and/or other consumer reports [fn. omitted] about you from a consumer reporting agency. These consumer reports may be used to evaluate your eligibility for hire or your continued employment with UPS, or for other employment purposes. These consumer reports may be obtained by UPS at any time after the receipt of your authorization to obtain the reports, and, if you are hired by UPS, throughout your employment with UPS, subject to applicable law. [¶] For information regarding your privacy, please see the following link. . . . [¶] By signing below, you acknowledge that UPS has made a clear and conspicuous disclosure to you, in a document that consists solely of the disclosure, that UPS may obtain a consumer report under the FCRA about you for employment purposes." The disclosure

contained an asterisk footnote, which read: "Under the FCRA, a [']consumer report['] is any written, oral, or other communication of any information by a consumer reporting agency bearing on an individual[']s credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the individual[']s eligibility for, among other things, employment." The disclosure also provided a check box next to the following text: "I agree that my electronic signature is the legally binding equivalent to my handwritten signature. By my electronic signature, I acknowledge that I have carefully reviewed this Agreement and understand its contents."

The webpage containing this disclosure had banners at the top and bottom of the page. The top banner contained UPS's logo and links to "Home," "About UPS," "Career Areas," "Working at UPS," "Search Jobs," and "Change Location." The bottom of the page had one banner with the phrase "Stay Connected" and apparent links to pages such as Facebook, Twitter, Instagram, and others. The second banner at the bottom of the page contained a brief copyright statement and 10 employee links, such as "Contact US," "Disability Accommodation Request," "FAQ," "Pay Transparency Policy," and "Status Enquiries." Moore checked the signature box on the disclosure as part of the application process.

UPS obtained a background report in connection with Moore's employment application. Moore was subsequently hired by UPS. Shortly thereafter, Moore terminated her employment with UPS.

**B. Procedural Background**

Appellant filed a putative class action against UPS alleging violations of (1) section 1681b(b)(2)(A) of the FCRA, (2) sections 1681d(a)(1) and

1681g(c) of the FCRA, and (3) Civil Code section 1785 et seq. The complaint also asserted UPS failed to timely pay all final wages as required by the Labor Code and engaged in unfair competition. The complaint sought all available remedies under section 1681n of the FCRA, including statutory damages and/or actual damages, punitive damages, injunctive and equitable relief, and attorney fees and costs. If the class pursues statutory damages for every person who applied for employment with UPS, UPS represented that amount could "theoretically exceed $1 billion." (Italics omitted.)

UPS removed the action to the United States District Court for the Northern District of California and subsequently moved to dismiss the matter. As relevant to this appeal, UPS alleged Moore failed to state a claim under the FCRA and lacked standing under article III of the United States Constitution (article III). UPS argued its disclosure complied with the FCRA, Moore had not plead any recoverable damages, and Moore did not allege an injury-in-fact sufficient to confer standing.

In response, Moore filed a motion to remand the matter to the California superior court. In relevant part, Moore argued, "[S]ince there is no Article III standing due to a lack of concrete harm, this court does not have subject matter jurisdiction and therefore the entire action should be remanded."

The District Court agreed with Moore and remanded the matter to superior court. It explained the allegations of "invaded 'privacy and statutory rights,' an unexplained reference to 'lost money or property,' and a request for 'restitution' [were] insufficient to describe a concrete and particularized harm." The court further noted the complaint lacked any "allegations of confusion, error, or other harm from the alleged violations." It found Moore's "bare procedural violations" insufficient to confer standing.

4

Upon remand, Moore filed a motion for summary adjudication. She contended the FCRA claim was amenable to summary adjudication because "the issue is the legality of the form," "willfulness is determined under an objective standard," and "conduct that violates the plain language of the statute is willful." Moore argued the disclosure was improperly "embedded within a webpage," contained "not just extraneous but also misleading and confusing language," including "language that amounts to a release," and referenced unrelated privacy rights. Moore asserted UPS's inclusion of these materials in the FCRA disclosure was "a willful violation of the FCRA," "[a]s a matter of law."

UPS also filed a motion for summary adjudication. UPS asserted its disclosure complied with the FCRA and, even if the disclosure violated the FCRA, any such violation was not willful. UPS argued that without a willful violation, Moore could not sustain her FCRA claim because she conceded she did not suffer actual damages.

The trial court issued a tentative ruling denying both Moore's and UPS's motions for summary adjudication. The court found UPS's disclosure notice did not comply with the FCRA but concluded, "[T]here are triable issues of material fact regarding whether [UPS's] violations were 'willful' for the purpose of assessing statutory penalties in the absence of evidence of actual damages."

At the contested hearing, counsel for UPS argued willfulness could be determined as a matter of law because "the issue is what was the state of the case law and . . . whether a defendant's interpretation of the statutory provision . . . was objectively unreasonable." Likewise, counsel for Moore argued that the court could find UPS's violation willful based on the language of the statute and the disclosure. The court thus took the matter under

5

submission, noting both parties wanted the court to decide the issue of willfulness.

Both parties subsequently filed supplemental briefs addressing whether UPS's disclosure constituted a willful violation as a matter of law. Moore argued both the clear language of the statute and applicable case law supported a finding of willfulness as a matter of law. Conversely, UPS asserted courts often determine disclosure violations are not willful as a matter of law given the lack of statutory clarity regarding what information may be included in the disclosure.

The trial court denied Moore's motion for summary adjudication and granted UPS's motion. The court first agreed with Moore that certain aspects of UPS's disclosure violated the FCRA. Specifically, the court acknowledged the second paragraph of the disclosure regarding "your privacy" and the two "signature/acknowledgement paragraphs" violate the FCRA's stand-alone requirement.[2] Next, the court addressed the issue of willfulness, noting (1) "[b]oth parties appear to agree generally that the court may decide the willfulness issue based on the text of the document," and (2) relevant authorities indicate willfulness may be decided as a matter of law. The court found the privacy information violation was not willful because UPS provided a reasonable argument why such information may have been permitted, and a recent case found analogous information to be included " 'in good faith.' " The court also found the improper text in the signature and acknowledgement paragraphs "did not rise to the level of reckless conduct and thus was not willful." The court explained, "[I]t appears

_____

[2] Conversely, the court found text from the surrounding webpage, "references [to] records and investigations that [UPS] did not actually access or obtain with respect to [Moore]," and the definition of " 'consumer report' " to not constitute violations.

6

the drafter took a broad and erroneous view of the allowable 'authorization' language under the statute . . . . but the error here was negligent, rather than reckless. The drafter failed to distinguish between an 'authorization,' an 'agreement' and an 'acknowledgement,' three closely related terms in this context."

Moore dismissed her remaining claims without prejudice, and the trial court entered judgment in UPS's favor. Moore timely appealed.

## II.

## DISCUSSION

On appeal, Moore argues the trial court erred by determining willfulness as a matter of law. She contends willfulness is a question of fact for the jury and UPS failed to demonstrate there were no material facts in dispute. In response, UPS contends Moore waived such an argument by failing to raise it with the trial court, willfulness could properly be decided as a matter of law, and the trial court correctly determined UPS's conduct was not willful. In supplemental briefing, UPS further argued Moore lacked standing to bring her FCRA claim.

### A. Standard of Review

" 'Summary adjudication motions are "procedurally identical" to summary judgment motions. [Citation.] A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [Citation.] To be entitled to judgment as a matter of law, the moving party must show by admissible evidence that the "action has no merit or that there is no defense" thereto. [Citation.] A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that

7

there is a complete defense to the action.  [Citations.]  Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense.  [Citations.] Material facts are those that relate to the issues in the case as framed by the pleadings.  [Citation.]  There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' "  (*Duffey v. Tender Heart Home Care Agency, LLC* (2019) 31 Cal.App.5th 232, 240–241 (*Duffey*).)

" 'The trial court's ruling on a motion for summary adjudication, like that on a motion for summary judgment, is subject to this court's independent review.'  [Citation.]  'In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing [his or] her evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor.' "  (*Duffey*, *supra*, 31 Cal.App.5th at p. 241.)  The court does not weigh evidence, but instead considers whether the evidence creates a triable issue of fact.  (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 113.)

## B.  Standing

As an initial matter, UPS relies on a recent opinion from the Fifth District Court of Appeal, *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671 (*Limon*), to contend Moore must have a concrete and particularized injury to have standing to assert her FCRA claim.  UPS argues Moore conceded she could not satisfy the requirements for federal standing, which also precludes a showing of standing in this matter.

In response, Moore raises two arguments: (1) violations of codified rights are per se injurious; and (2) Moore and the putative class have a beneficial interest and have personally been injured by UPS's violation. We address each argument in turn.

Certainly, differences exist between federal and state standing principles. In federal courts, standing is governed by article III. "Article III of the federal Constitution imposes a 'case-or-controversy limitation on federal court jurisdiction,' requiring ' "the party requesting standing [to allege] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues.' " ' [Citation.] There is no similar requirement in our state Constitution." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13; see Cal. Const., art. VI, § 10 [empowering superior court to adjudicate any "cause" brought before it]; *National Paint & Coatings Assn. v. State of California* (1997) 58 Cal.App.4th 753, 761 ["Our state Constitution contains no 'case or controversy' requirement."]; *Langford v. Superior Court* (1987) 43 Cal.3d 21, 36, fn. 6 ["California's [standing] requirements are less stringent than those imposed by federal law."].)

Rather than being bound by the exacting requirements of "concrete interest" of article III, California courts are guided by " 'prudential' " considerations in evaluating a party's ability to litigate an issue. (*Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 877–878.) Thus, in California courts, "[o]ne who invokes the judicial process [has] 'standing' if he [or she], or those whom he [or she] properly represents, [has] a real interest in the ultimate adjudication because the actor has [either] suffered [or] is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented." (*California*

9

*Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22–23; see *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 629.) Stated another way, litigants in California have standing when they can show "a personal interest in the litigation's outcome." (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1046; see *Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 370.) And this is true regardless of whether they can satisfy the more rigorous federal standards arising out of article III. (See *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 439–440.)

"The prerequisites for standing to assert statutorily based causes of action are determined from the statutory language, as well as the underlying legislative intent and the purpose of the statute." (*Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 466.)

### 1. *Limon*

In *Limon*, the plaintiff, Ernesto Limon, alleged Circle K Stores Inc. (Circle K) violated the FCRA by failing to provide the required disclosures in connection with his employment application. (*Limon*, *supra*, 84 Cal.App.5th at p. 680.) In relevant part, the trial court granted Circle K's motion to dismiss the complaint on the grounds that Limon lacked standing because he failed to allege or suffer any injury. (*Id.* at pp. 680, 685.) On appeal, the Fifth Appellate District considered whether and to what extent Limon "must suffer an injury in order to have standing to sue under the FCRA in California courts." (*Id.* at p. 690.)

In analyzing this question, the Court of Appeal noted the Legislature has "power to confer standing on a class of persons irrespective of whether they suffered injury," e.g., no injury is required for citizen suits brought in the public interest pursuant to Code of Civil Procedure section 526a. (*Limon*, *supra*, 84 Cal.App.5th at pp. 695, 693.) However, the court concluded "as a

10

general matter, to have standing to pursue a claim for damages in the courts of California, a plaintiff must be beneficially interested in the claims he is pursuing." (*Id.* at p. 700.) The court noted this beneficial interest test is similar to the federal "injury-in-fact" test. (*Id.* at pp. 697–698.)

The court then applied this general principle of standing to the FCRA. (*Limon*, *supra*, 84 Cal.App.5th at p. 700.) The court explained the language of the FCRA did not excuse plaintiffs from demonstrating a beneficial interest, which it equated to injury in fact. (*Limon*, at p. 700.) Specifically, the court noted section 1681n of the FCRA contained a statutory damages provision, and "the term damages connotes compensation for an injury." (*Limon*, at pp. 700–702.)

In addressing injury, Limon claimed the noncompliant disclosure violated his interests in privacy and access to information. (*Limon*, *supra*, 84 Cal.App.5th at p. 703.) In response, Circle K argued Limon received all information required under the FCRA and any " 'confusion' " was insufficient to constitute injury because, in part, Limon testified he would have authorized Circle K to run a consumer report even if he received an " 'indisputably compliant FCRA form.' " (*Limon*, at p. 704.)

The court concluded Limon failed to allege an injury sufficient to support standing under the FCRA. (*Limon*, *supra*, 84 Cal.App.5th at p. 707.) The court explained "there was no injury to Limon's protected interest in ensuring fair and accurate credit (or background) reporting" because he received a copy of the report, it did not contain injurious or false information, and he did not allege any material risk of future harm. (*Id.* at p. 705.) The court also noted "Limon undoubtedly understood he was advising Circle K he was willing to have it conduct a background check on him prior to being hired" based on his deposition testimony. (*Id.* at pp. 705–706.) Likewise, the

11

court rejected Limon's claim of an informational injury because "an informational injury that causes no adverse effect is insufficient to confer standing upon a private litigant to sue under the FCRA." (*Id.* at p. 707.)

### 2. Statutory Violation

Moore asserts this court should not follow *Limon* because the Fifth Appellate District ignored the FCRA's statutory language requiring the disclosure be made "in a document that consists ***solely*** of the disclosure." She relies on *Carey v. Piphus* (1978) 435 U.S. 247 (*Carey*) and *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160 (*Angelucci*) to assert violations of codified rights are per se injurious.

Neither *Carey* nor *Angelucci* support Moore's position because both cases recognize that plaintiffs must suffer injury to have standing. In *Angelucci*, the plaintiffs alleged they had been charged higher entrance fees than women in violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.; Unruh Act). (*Angelucci, supra*, 41 Cal.4th at pp. 164–165.) The California Supreme Court noted: "In general terms, in order to have standing, the plaintiff must be able to allege injury—that is, some 'invasion of the plaintiff's legally protected interests.' [Citations.] [¶] Standing rules for actions based upon statute may vary according to the intent of the Legislature and the purpose of the enactment." (*Id.* at p. 175.) The court, turning to the statutory language of the Unruh Act, then concluded "arbitrary gender discrimination is per se injurious [under the Unruh Act], and that the particular plaintiff suffered actual injury because he paid more for admission or services than female patrons." (*Angelucci*, at p. 177.)

In *Carey*, two students asserted they were denied procedural due process and sued under title 42 United States Code section 1983. (*Carey, supra*, 435 U.S. at p. 248.) The United States Supreme Court acknowledged

the "basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." (*Carey*, *supra*, 435 U.S. at p. 254.) The court further explained, "Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." (*Ibid.*) The court rejected the respondents' argument that "injury fairly may be 'presumed' to flow from every denial of procedural due process." (*Id.* at p. 261.) The court instead concluded a plaintiff must "convince the trier of fact that he [or she] actually suffered distress because of the denial of procedural due process itself." (*Id.* at p. 263.) However, the Supreme Court acknowledged "courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money," and found allowing nominal damages appropriate for procedural due process violations. (*Id.* at p. 266.)

Neither case stands for the proposition, as alleged by Moore, that violating a statutory right constitutes a per se injury. Rather, these cases indicate plaintiffs generally must demonstrate actual injury, and courts must evaluate the statutory language and interests at issue in determining whether an exception to this general rule applies.

Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of [the FCRA]." (§ 1681(b).) "In amending the FCRA in 1996, 'Congress was specifically concerned that prospective employers were obtaining and using consumer reports in a

13

manner that violated job applicants' privacy rights." (*Limon, supra,* 84 Cal.App.5th at p. 689.)  The Legislature thus enacted section 1681b(b)(2)(A), which provides in relevant part:  "[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless— [¶] (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and [¶] (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person."

Section 1681b(b)(2)(A) was intended to " 'further[] Congress's overarching purposes of ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy.  [Citation.] . . . [T]he provision promotes error correction by providing applicants with an opportunity to warn a prospective employer of errors' before an adverse hiring decision is made based on incorrect information." (*Limon, supra,* 84 Cal.App.5th at p. 689.)  As otherwise stated by the Ninth Circuit Court of Appeal, the "FCRA aims 'to ensure fair and accurate credit reporting' and to 'protect consumer privacy.' " (*Robins v. Spokeo, Inc.* (9th Cir. 2017) 867 F.3d 1108, 1113.)

Here, the FCRA's statutory language demonstrates the interests being protected are fair and accurate reporting and consumer privacy; the disclosure requirements are merely a mechanism through which to promote those interests.  Accordingly, we find no basis for labeling a disclosure violation per se injurious, when that violation may not necessarily harm the

14

substantive rights of fair and accurate reporting and consumer privacy.[3]  For example, a noncompliant disclosure may not impact the consumer's employment or his or her right to receive and correct any errors in their report.  (See, e.g., *Limon*, *supra*, 84 Cal.App.5th at p. 705 [plaintiff "does not allege he did not receive a copy of the consumer report," does not allege the report "contains any defamatory content" or "false or inaccurate information," and does not allege "any adverse employment decision based on false or inaccurate reporting"].)

Thus, in the context of a noncompliant disclosure, the question is whether that technical violation impaired a plaintiff's substantive rights under the FCRA.  (See *Bassett v. ABM Parking Services, Inc.* (9th Cir. 2018) 883 F.3d 776, 783 ["In assessing violations of procedural statutory rights, we consider whether 'the specific procedural violations alleged . . . actually harm, or present a material risk of harm to [the plaintiff's] interests.' "]; accord, *Boorstein v. CBS Interactive, Inc.* (2013) 222 Cal.App.4th 456, 473 ["although informational injuries may be cognizable in some cases, under [Civil Code section 1798.83 et seq.] a defendant's failure to post information on its Web site in the manner the statute requires, *without more*, does not give rise to a cause of action"]; *Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 266 ["attempt to equate a denial of equal access with the presence of a violation of federal or state regulations would nullify the standing requirement of [Civil Code] section 54.3, since any disabled person could sue for statutory damages whenever he or she encountered noncompliant facilities, regardless of whether that lack of compliance

---

[3] Moreover, we note the *Carey* court declined to find that a procedural due process violation constituted a per se injury, despite the importance of such rights.  (*Carey*, *supra*, 435 U.S. at pp. 261–262.)

actually impaired the plaintiff's access to those facilities"].)  We thus agree with *Limon* that a plaintiff must demonstrate an impairment of his or her substantive rights in order to have standing to assert a claim under the FCRA.

### 3.  Beneficial Interest

Moore next argues she has, in fact, established a beneficial interest in the litigation because UPS conducted a background check on her without first providing a "clear and conspicuous disclosure on a document consisting solely of the disclosure."  As explained above, a statutory violation of the disclosure provision, by itself, is insufficient to establish a beneficial interest in the litigation.  Moore is required to allege such noncompliance impaired her substantive rights under the FCRA.

However, we note such a showing of impact is distinct from demonstrating actual damages.  We agree with federal courts that have held actual damages are not "a relevant factor when determining the amount of statutory damages under FCRA because FCRA expressly imposes a heavier burden on class members seeking statutory damages (*i.e.*, proof of the defendant's willfulness) than it does on those seeking only actual damages. The import of FCRA's statutory/actual damage scheme is that those plaintiffs who are unwilling or unable to present proof of actual damage may still recover statutory damages, but only on the condition that they establish the defendant at least recklessly disregarded FCRA's adverse-action notice requirements."  (*Ashby v. Farmers Ins. Co. of Oregon* (D.Or. 2008) 592 F.Supp.2d 1307, 1318.)

While Moore does not contend the current complaint contains such allegations, she asserts remand is appropriate to amend her complaint to allege an injury in fact.  Even assuming Moore could amend her complaint to

properly allege standing, we deny her request to remand because, as discussed below, we conclude the trial court properly determined willfulness as a matter of law and granted summary adjudication in UPS's favor.

## C. *Motions for Summary Adjudication*

The trial court granted UPS's motion for summary adjudication, and denied Moore's, because it concluded the disclosure violations under the FCRA were not willful. On appeal, Moore argues willfulness is generally a question of fact for the jury. She contends "the trial court's express findings" fail to demonstrate that no triable issue of fact exists as to whether the FCRA violations were willful.

"[W]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." (*Safeco Ins. Co. of America v. Burr* (2007) 551 U.S. 47, 57 (*Safeco*).) A company subject to the FCRA acts in reckless disregard when its action both is "a violation under a reasonable reading of the statute's terms" and "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." (*Safeco*, at p. 69.)

While some courts have concluded willfulness raises questions of fact for the jury, others have found it appropriate to decide as a matter of law. (Compare, e.g., *Syed v. M-I, LLC* (9th Cir. 2017) 853 F.3d 492, 503 (*Syed*) ["We may resolve this question as a matter of law"]; *Mitchell v. WinCo Foods, LLC* (9th Cir. 2020) 828 Fed.Appx. 467, 468 ["violation [of FCRA] was not based on an 'objectively unreasonable' interpretation of an unambiguous statutory provision" because "there was a 'dearth of guidance' as to the definition of 'disclosure' and 'solely' at the time Defendant provided the disclosure to Plaintiff"]; *Murray v. New Cingular Wireless Services, Inc.* (7th

17

Cir. 2008) 523 F.3d 719, 726 [recklessness standard "is objective"], with *Syed*, at p. 505, fn. 7 ["In *Safeco*, the Supreme Court did not foreclose the possibility that a party's subjective interpretation of the FCRA may be relevant in some circumstances."]; *Snell v. G4S Secure Solutions (USA) Inc.* (E.D.Cal. 2019) 424 F.Supp.3d 892, 902 [" ' "[w]illfulness under the FCRA is generally a question of fact for the jury" ' "].) As explained by the United States Supreme Court, "[w]hile 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' [Citations.] . . . [¶] . . . [¶] There being no indication that Congress had something different in mind, we have no reason to deviate from the common law understanding in applying the statute." (*Safeco*, *supra*, 551 U.S. at pp. 68–69, fn. omitted.)

### 1. Waiver

As an initial matter, we conclude Moore waived her argument that the trial court erred in deciding the issue of willfulness. " 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' [Citation.] As a leading treatise puts it, an appellant 'cannot complain of error [it] personally "invited." In other words, one whose conduct induces or invites the commission or error by the trial court is *estopped* from asserting it as a ground for reversal on appeal.' " (*Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1000.)

Moore contends her position was merely that *her* summary adjudication motion could be decided as a matter of law because UPS violated the unambiguous terms of the FCRA. But Moore never raised such a distinction with the trial court. UPS's motion for summary adjudication

18

argued it did not engage in conduct that constituted an unjustifiably high risk of violating the FCRA. In response, Moore raised various arguments for why the disclosure violated the FCRA and asserted the violations were willful "[a]s a matter of law" and not "objectively tenable." Her argument relied solely on the language of the disclosure, relevant authorities, and Federal Trade Commission guidance. At no point did Moore contend UPS's motion raised a factual question improper for summary adjudication.

Moreover, we note the trial court specifically confirmed with the parties that they wanted the court to decide the matter of willfulness. Initially, the trial court concluded "there are triable issues of material fact regarding whether [UPS's] violations were 'willful' . . . ." However, the court took the matter under submission, noting both parties wanted the court to decide the issue of willfulness. Moore did not contest this statement, and her supplemental brief on willfulness solely argued the issue could be decided as a matter of law. Accordingly, Moore cannot now argue the trial court erred in doing so.[4]

## 2. Willfulness

---

[4] Moore argues the trial court indicated willfulness should have been an evidentiary issue by commenting about the lack of evidence as to UPS's subjective intent. During oral argument, her counsel focused on the court's statement that "neither party has presented any evidence to the Court regarding [UPS]'s purpose or intent in drafting the present FCRA Disclosure Notice," and argued it demonstrated UPS failed to meet its burden of proof. We disagree. As we have already discussed, both parties represented to the court the issue could be decided as a matter of law. In addition, Moore's opposition to UPS's summary adjudication motion never identified any disputed issues of fact and did not assert UPS failed to meet its burden of proof. We interpret this comment as an acknowledgment that no factual issues were presented by the parties that would prevent the court from deciding willfulness as a matter of law.

Even if Moore had not conceded this issue, we conclude the trial court did not err in finding willfulness as a matter of law. As discussed above, various courts, including the United States Supreme Court, have discussed recklessness as setting forth an objective standard. Such an approach mirrors that advocated by the parties in this matter. Namely, that the language of the disclosure, the applicable statutory provisions, and existing case law provide an adequate framework from which the court could assess whether UPS acted willfully.

Moore first argues the mere existence of extraneous language in the disclosure indicates willfulness. But that alone does not meet the test set forth in *Safeco* and *Syed*. The trial court acknowledged two portions of the disclosure violated the FCRA and were thus objectively unreasonable, and neither party challenged this finding on appeal. However, a company acts recklessly only when its conduct is *both* "a violation under a reasonable reading of the statute's terms" *and* "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." (*Safeco, supra,* 551 U.S. at p. 69.) The extraneous language only meets the first element; it does not necessarily indicate the company engaged in conduct that "substantially" exceeded carelessness. (See *Syed, supra,* 853 F.3d at p. 505 ["It is possible to imagine an interpretation of 15 U.S.C. § 1681b(b)(2)(A) that would be objectively unreasonable without rising to the level of recklessness."])

Here, the court concluded the supplemental language in the disclosure constituted a "negligent, rather than reckless" interpretation of "the allowable 'authorization' language under the statute." In considering recklessness, the court considered both the statutory language and relevant legal guidance that existed when UPS provided the disclosure to Moore.

(Accord, *Murray v. New Cingular Wireless Services, Inc.*, *supra*, 523 F.3d at p. 727 ["It would be reckless *today* to use the same notice" in light of subsequent authority, "but it was not reckless to act as [defendant] did in 2003"].)

Moore asserts *Syed* had been decided in January 2017 and amended in March 2017, whereas UPS provided the noncompliant disclosure in October 2017. Thus, Moore reasons, UPS should have been aware its disclosure violated the FCRA. We disagree. The parties were in the process of appealing *Syed* at the time of Moore's disclosure, and the petition for writ of certiorari was not denied until November 2017. (*M-I, LLC v. Syed* (2017) 138 S.Ct. 447; accord, *U.S. v. Madden* (4th Cir. 2000) 205 F.3d 1335 [judgment became final when "the Supreme Court denied his petition for certiorari"].)

Moreover, we find *Syed* distinguishable on its facts. In *Syed*, the defendant, M-I, LLC, asserted inclusion of a liability waiver did not constitute a willful violation of the FCRA. (*Syed*, *supra*, 853 F.3d at p. 500.) Syed argued the statute allowed for authorizations, which made the requirement that the document consist " 'solely of the disclosure' " internally inconsistent. (*Ibid*.) The Ninth Circuit Court of Appeal disagreed. It explained the provision allowing for an authorization as part of the disclosure was consistent with "the requirement that the document consist 'solely of the disclosure' " because it was "consistent with the purpose of the statute," i.e., "protect[ing] consumers from 'improper invasion[s] of privacy.' "[5] (*Syed*, at pp. 500–501.) Conversely, the court noted the liability waiver conflicted

---

[5] Moore also relies on *Hebert v. Barnes & Noble, Inc.* (2022) 78 Cal.App.5th 791 and *Gilberg v. California Check Cashing Stores, LLC* (9th Cir. 2019) 913 F.3d 1169, but neither case had been decided at the time UPS provided the disclosure to Moore.

"with the FCRA's basic purpose," and the FCRA "unambiguously foreclose[d] the inclusion of a liability waiver in a disclosure document." (*Syed*, at pp. 502, 505.) The court thus concluded M-I, LLC's interpretation of the statute was both objectively unreasonable and reckless. (*Syed*, at pp. 504–505.)

Here, as noted by the trial court, UPS did not attempt to include a liability waiver unrelated to the disclosure. Rather, the disclosure contained an acknowledgement that UPS was providing the FCRA-required disclosure, an acknowledgement that Moore received and understood the disclosure, and authorization to obtain a consumer report. While the FCRA allows companies to obtain an authorization (see § 1681b(b)(2)(A)(ii)), much of the language exceeds what is allowed by statute. However, unlike the liability waiver in *Syed*, the additional language arguably relates to the purpose of the disclosure. The FCRA requires companies to certify to a consumer reporting agency that they complied with the required consumer disclosure, including providing "a clear and conspicuous disclosure . . . , in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." (§ 1681b(b)(2)(A)(i).) The additional language in the disclosure appears to be UPS's attempt to include this certification as part of the disclosure.

Finally, we note Moore argues UPS failed to demonstrate there are no triable issues of fact on the issue of willfulness. However, UPS's separate statement and Moore's opposition thereto does not identify any factual disputes on the issue of willfulness. At no point does Moore argue to the trial court that such fact disputes exist. And, most notably, on appeal Moore has not identified any material facts in dispute. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 [court is "not required to

22

search the record to ascertain whether it contains support for [appellant's] contentions"].)

While the additional language involving the acknowledgements and authorization were improper, under the terms of the statute and authorities interpreting that language as they existed in 2017, the inclusion of this language did not "ris[e] to the level of recklessness."[6] (*Syed*, *supra*, 853 F.3d at p. 505.)

## III.

## DISPOSITION

The judgment is affirmed. UPS may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[6] The trial court also found a reference to Moore's privacy rights violated the FCRA but was not willful. It explained the disclosure was provided to Moore "three years before [*Walker v.*] *Fred Meyer*[*, Inc.* (9th Cir. 2020) 953 F.3d 1082] was decided, and the Fred Meyer Court noted *Fred Meyer*'s inclusion of the analogous privacy policy information 'appear[ed]' to be 'in good faith.' " Moore has not challenged this willfulness finding on appeal. (*Western Growers Assn. v. Occupational Safety & Health Standards Bd.* (2021) 73 Cal.App.5th 916, 947, [" 'An appellant's failure to raise an argument in its opening brief waives the issue on appeal.' "]; *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948 [court may treat argument as waived or abandoned when brief fails to contain legal argument with citation to authorities].)

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A164894
*Moore v. United Parcel Service, Inc.*